Argued and submitted April 6, 1999; resubmitted en banc June 7, affirmed
August 23, 2000

Roy L. STAMP,
dba Blue Mountain Pools,
*Petitioner,*

*v.*

DEPARTMENT OF CONSUMER AND
BUSINESS SERVICES,
*Respondent.*

(INS 95-06-013; CA A102274)

9 P3d 729

Gary G. Linkous argued the cause and filed the brief for petitioner.

Denise Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, and Brewer, Judges.

WOLLHEIM, J.

Edmonds, J., dissenting.

## WOLLHEIM, J.

■     Petitioner seeks judicial review of a final order of the Department of Consumer and Business Services (DCBS) upholding a workers' compensation premium audit billing for the period October 1, 1993 through September 30, 1994. At issue is whether petitioner's brother, an independent contractor registered with the Construction Contractor's Board (CCB), was an employee of petitioner. If petitioner's brother was an employee, then petitioner was liable to pay workers' compensation premiums. We review the findings of fact for substantial evidence and review the conclusions of law to determine if they are correct as a matter of law. *Oregon Drywall Systems v. Natl. Council on Comp. Ins.*, 153 Or App 662, 666, 958 P2d 195 (1998). We affirm.

The facts are uncontested. Roy Stamp, petitioner, builds swimming pools under the business name Blue Mountain Pools (Blue Mountain).[1] During the audit period, Roy used Gary Stamp exclusively for the tile work on the 19 pools constructed by Blue Mountain. Roy's work constituted roughly 90 percent of Gary's income for that period. Gary performed only three jobs for persons other than Roy during that time. At one point prior to the audit period, Gary went commercial fishing, but he then returned and continued to work on Roy's pools. Roy generally paid Gary after completion of the work and the pay was based on the amount of tile laid. However, Roy on occasion paid Gary an advance for materials or travel, and, in one instance, loaned Gary money that was then deducted from a subsequent invoice. On several projects, Gary hired an assistant.

SAIF provided workers' compensation insurance for Blue Mountain. SAIF conducted a premium audit of Blue Mountain and concluded that Roy was responsible for providing workers' compensation coverage for Gary and his employee. SAIF billed Blue Mountain accordingly. Roy appealed that billing.

---

[1] Petitioner's brother is Gary Stamp and conducts business under the name Style Tile. For purposes of clarity, throughout this opinion we shall refer to them as Roy and Gary.

A hearings officer concluded that Gary was Roy's employee during the audit period. The hearings officer's proposed order stated five ultimate findings of fact: (1) Roy did not direct or control the day-to-day work of Gary; (2) Roy retained the right to direct or control the day-to-day work of Gary; (3) Gary provided all of his own tools and equipment for performing the work; (4) Gary was paid on an hourly basis and on the basis of the amount of material installed; and (5) Gary had one employee while working on jobs for Roy but did not obtain workers' compensation coverage until May 24, 1994. The hearings officer then applied the "right to control" test and the "nature of the work" test to reach the conclusion that Gary was Roy's employee.

■    The four factors to be considered when applying the right to control test include: (1) direct evidence of the right to, or exercise of, control; (2) the furnishing of tools and equipment; (3) the method of payment; and (4) the right to fire. *Kaiel v. Cultural Homestay Institute*, 129 Or App 471, 475, 879 P2d 1319, *rev den* 320 Or 453 (1994).

Applying the right to control factor, the hearings officer first concluded that, although Roy did not direct or control the day-to-day activities of Gary, Roy did retain the *right* to control Gary's work. The hearings officer relied on a range of evidence in reaching that conclusion. The hearings officer found that Roy was responsible for assigning Gary work, that Roy directed when and where Gary worked, and that, during the audit period, Gary worked almost exclusively for Roy, and Roy used Gary exclusively for the tile work on all the swimming pools constructed by Roy. The hearings officer also noted that Gary performed his work consistently with a work order and to Roy's expectations about the quality of work. Additional evidence cited by the hearings officer included the fact that contractors or homeowners dealt primarily with Roy instead of Gary, that they contacted Roy when there was a problem with Gary's work, and that they did not bargain about the price of the tile work with Gary. The hearings officer also explained that the testimony of both Roy and Gary convinced the hearings officer that Roy

retained the right to instruct Gary on how a job was to be performed. The hearings officer concluded that the right to control factor indicated that Gary was an employee.

Addressing the second factor, the hearings officer found that Gary provided all of his own tools and equipment and concluded that that factor supported an independent contractor status. That conclusion is not challenged by petitioner.

The hearings officer concluded that the third factor was neutral because Gary was typically paid on the basis of the amount of materials installed. *See Henn v. SAIF*, 60 Or App 587, 592, 654 P2d 1129 (1982), *rev den* 294 Or 536 (1983) (citing 1C Larson, *Workmen's Compensation Law*, § 44.33(b) (1978) ("When payment is by quantity or percentage, the method of payment test * * * largely cancels itself out and becomes neutral.")).

Finally, the hearings officer concluded that the fourth factor, the right to fire, was neutral if not indicative of employee status. Because Roy and Gary never used written contracts, there was little evidence before the hearings officer concerning that factor.

After completing the analysis of the right to control test factors, the hearings officer did not indicate whether he ultimately concluded that those factors indicated employee status or independent contractor status or whether the test was inconclusive. Instead, the hearings officer immediately proceeded to the relative nature of the work test.

The relative nature of the work test consists of two elements. The first is the character of the person's work or business—its skill, status as a separate enterprise, and the extent to which it may be expected to carry the burden of its accidents itself. *Woody v. Waibel*, 276 Or 189, 195, 554 P2d 492 (1976) (citing 1A Larson's, *Workmen's Compensation Law*, § 43.52 (1973)). The hearings officer noted that Gary's skills were the product of apprenticeship training and that he relied on his brother for his livelihood. The hearings officer also interpreted Gary's commercial fishing trips to Alaska before the audit period as an indication of Gary's reliance on

Roy's business as opposed to an indication of Gary's independence.

The second nature of the work test element is the relation of a person's work to the employer's business—how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether it is of sufficient duration to be the hiring of continuing services rather than contracting for a particular job. *Id.* The hearings officer noted that Gary's work was integral to the building of Roy's pools and that Roy kept Gary more or less fully employed during the audit period. Although Roy arranged with Gary to perform each job, the hearings officer concluded that the relationship was in the nature of the hiring of continuing services. The hearings officer concluded that Gary was an employee under the relative nature of the work test.

The hearings officer then conducted an analysis under ORS 656.029 (governing workers' compensation coverage for individuals who perform labor under a contract) and ORS 656.027(7) (the sole proprietor exemption to "worker" status).[2] Finally, the hearings officer calculated the payroll amount subject to a new billing assessing a workers' compensation premium and ordered SAIF to withdraw its prior audit billing and issue a new billing.

Roy appealed and DCBS affirmed the proposed order.

On review here, petitioner argues that Gary was not Roy's employee, that the hearings officer improperly applied the "right to control" test and the "nature of the work" test, and that there was no substantial evidence to conclude that Roy had paid Gary any wages. Therefore, petitioner concludes that DCBS improperly upheld the premium audit billing.

We follow the methodology set forth in *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 872 P2d 1 (1994), to determine whether an individual is a "subject worker" under the workers' compensation law. We must

---

[2] All statutory references are to the statutes in effect during the audit period unless otherwise noted.

first determine whether the individual is a "worker" as defined under ORS 656.005(30). To make that determination, we apply the "right to control" test. If, and only if, that test is inconclusive, we apply the "relative nature of the work" test.[3] If the person is determined to be a worker under either test, we must then determine whether that person is a subject worker or is excluded from subject status by one of the subsections under ORS 656.027. If the person is a subject worker and is not excluded, the worker is subject to the workers' compensation laws and the employer must pay premiums for that worker. *Id.* at 630-31.

Petitioner first argues that there was no substantial evidence to find that Gary was a "worker" or a "subject worker." ORS 656.005(30) defines a worker as "any person * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer * * *." The evidence demonstrates that Gary furnished services to Roy for remuneration. The only issue here is whether Gary was under Roy's direction and control. To resolve that issue, we apply the right to control test.

■ As explained above, the right to control test consists of analyzing four factors. No single factor is dispositive in all instances. However, a single factor that indicates an employer-employee relationship may constitute proof of an employment relationship whereas contrary evidence, indicating independent contractor status, is, at best, mildly persuasive and may have no effect at all to a determination of worker status. *See Cy Investment, Inc. v. Natl. Council on Comp. Ins.*, 128 Or App 579, 584, 876 P2d 805 (1994).

The first factor in the right to control test is evidence of the right to exercise, or actual exercise of, control. In reaching the conclusion that this factor indicated an employee status, the hearings officer relied on the evidence regarding the assignment of work, the performance and quality control

---

[3] Petitioner is correct that the hearings officer incorrectly applied the two tests when he immediately proceeded from the first test to the second. The hearings officer should have made an explicit determination that the right to control test was inconclusive about Gary's worker status before proceeding with the relative nature of the work test. We conclude that the hearings officer misconstrued and misapplied the two tests.

of that work, and the party held responsible for the work. The hearings officer also stated that he based his conclusion on the oral testimony of both Roy and Gary. That testimony includes, among other things, statements that, during the audit period, Gary never turned down a Blue Mountain project,[4] and that Roy told SAIF that he wanted to keep Gary so

---

[4] The dissent contends that *Oregon Drywall Systems* stands for the proposition that independent contractor status exists when the subcontractor works solely for one employer and that independent contractor status exists when the subcontractor possesses special expertise. 169 Or App at 369. We disagree with both contentions.

Oregon Drywall was a drywall contractor and registered general contractor for residential and commercial buildings. It had its own employees who did drywall work. On occasion, when a drywall project was too large for Oregon Drywall to complete with its own employees, it would contract work to drywall subcontractors. Subcontractor jobs were generally separate from jobs for which Oregon Drywall used its own employees. During the relevant audit period, Oregon Drywall had contracted work to approximately 18 different drywall subcontractors. A premium audit billing assessed Oregon Drywall premiums for its employees and for the 18 subcontractors. Oregon Drywall contested the assessment *only* for the 18 subcontractors. *Oregon Drywall Systems*, 153 Or App at 664-65. We concluded that DCBS erred in holding that the drywall subcontractors who performed services for Oregon Drywall were workers under the workers' compensation system and reversed. *Id.* at 664.

Nowhere does *Oregon Drywall Systems* say or imply that an independent contractor can work for only one employer and that that employer will not be liable for workers' compensation premiums. The closest statement we can find that could lead to that conclusion is "[m]ost subcontractors worked for other contractors as well." *Id.* at 665. If one reads that statement in the negative, one can understand it to imply that some contractors worked for only one contractor—Oregon Drywall. However, when one understands the facts, even that statement is misleading. Each of the 18 drywall subcontractors was an independent drywall contractor. Some, most or nearly all of their work and earnings—the facts are not sufficient to determine which was the case—came from contracts they obtained as drywall *contractors*. Only when they had not obtained their own contracts and had free time did they bid *as subcontractors* on Oregon Drywall jobs that Oregon Drywall could not complete with its own employees. Viewed from that understanding, the *Oregon Drywall Systems* statement at issue is best understood to mean that most of the 18 subcontractors that Oregon Drywall used would also subcontract out their services to other general contractors when the subcontractors were unable to obtain contracts on their own. However, some of the 18 had acted as subcontractors only with Oregon Drywall; otherwise they worked solely as drywall contractors under contracts they had obtained. *Oregon Drywall Systems* does not stand for the proposition that, under the statutes in effect at the time, a subcontractor could perform all of its work for one contractor, under the direct control of that contractor, and that contractor would not be liable for workers' compensation premiums.

The second proposition concerning *Oregon Drywall Systems* made by the dissent that we find troubling is that when a general contractor has a job that requires expertise, that fact suggests that an individual is an independent contractor, rather than a worker. 169 Or App at 369. That is an incorrect interpretation of *Oregon Drywall Systems*. A worker's expertise is significant to the analysis of a worker's status only if the right to control test is inconclusive. A worker's expertise

busy that Gary would not have time to work for others.[5] We conclude that the evidence that the hearings officer explicitly and implicitly relied on addresses the nature of Roy and Gary's relationship, indicates that Roy was "in charge" and indicates that Roy had a right to control Gary's work.

This is not the first instance that we have looked at similar evidence and reached the conclusion that it indicated a right to control. In *HDG Enterprises v. Natl. Council on Comp. Ins.*, 121 Or App 513, 520, 856 P2d 1037 (1993), we reversed a Department of Insurance and Finance (DIF) conclusion that the right to control test was inconclusive. Specifically, we did not agree with DIF's conclusion that the first factor—the control factor—was neutral. We concluded that the "employer had the right to exercise significant control" over floor covering installers. *Id.* at 518. Among other facts, DIF found (1) that the employer directed the time and place of installation; (2) that the installation was in accordance with specifications furnished by employer; (3) that written agreements indicated the degree of control the employer could exercise; (4) that the employer was specific about the nature and quality of the finished product desired; (5) that the employer did not physically supervise the installation; and (6) that it was the employer to whom customers turned if there was a problem with the quality of the installation. *Id.* Each of those facts was relevant to the right to control factor. Each of those facts, with the exception of written agreements, is present in the case before us now. Because of the presence here of similar facts and additional facts contained in Roy's and Gary's testimony, we reach the same conclusion here that we did in *HDG Enterprises*—the right to control factor indicates that an employment relationship existed between Roy and Gary.

---

becomes relevant only at the first element of the relative nature of the work test—the element that looks at the character of the person's work or business. We expressly did not reach the nature of the work test in *Oregon Drywall Systems. Id.* at 669. *Oregon Drywall Systems* expressly follows the method for determining whether an individual is a person entitled to benefits under the workers' compensation system set forth in *S-W Floor Cover Shop. Id.* at 666. No other implications should be read into *Oregon Drywall Systems*'s analysis or conclusion.

[5] We note that one factor that distinguishes the facts here from those of *Oregon Drywall Systems* is that there "Oregon Drywall [employer] had no interest or concern in any arrangement subcontractors might make to work with others." 153 Or App at 665. The same cannot be said about the facts here.

We agree with the hearings officer that the second factor supports an independent contractor status. The evidence in the record indicates that Gary provided all of his own tools and equipment for laying tile.

The hearings officer concluded that the third factor was neutral because Gary was typically paid on the basis of the amount of materials installed. Although evidence exists in the record that Gary was occasionally paid an hourly rate, those instances were infrequent. We previously have held that when payment is by quantity, the method of payment factor is generally neutral. *Henn*, 60 Or App at 592. That is our conclusion here as well.

The fourth factor, the right to fire, is difficult to resolve in this instance because Roy and Gary never used written contracts. Thus, there is little evidence in the record concerning this factor. The lack of a written contract could just as readily indicate employee status as it could independent contractor status. Because the evidence is not conclusive, we agree with the hearings officer's conclusion that the fourth factor is neutral.

In summary, our application of the right to control test produces the following results: the right to control factor indicates an employment relationship; the furnishing of tools and equipment factor indicates independent contractor status; and the method of payment factor and the right to fire factor are neutral.

We hold that the result of the right to control factor is dispositive in this instance. *See Cy Investment, Inc.*, 128 Or App at 584. Because of the multiple indicators of an employer-employee relationship revealed by that factor, the only conclusion that can properly be reached after application of the right to control test is that Gary was a Blue Mountain worker during the audit period.

■ ■ Because Gary was a worker, we must determine whether he was also a subject worker. ORS 656.027 states that all workers are subject workers unless specifically excepted. Subsection (7) excepts sole proprietors who qualify as an independent contractor from subject worker status. Independent contractor status is established if an individual

satisfies all eight standards under ORS 670.600. *See HDG Enterprises*, 121 Or App at 520. We need look only to the first standard to determine that Gary was not an independent contractor during the audit period. That standard requires that the individual be "free from direction and control over the means and manner of providing the labor or services." ORS 670.600(1). Because in our application of the right to control test we concluded that Gary was not free from direction and control of his services, Gary cannot have been an independent contractor under ORS 670.600.

Petitioner argues that Gary's registration with the CCB is conclusive proof that he was an independent contractor and, consequently, Gary is not a "subject worker." He argues that ORS 656.027(7) specifically excludes sole proprietors. That argument is not well taken. The *present* version of ORS 656.027(7) specifically excludes sole proprietors in subsection (b).[6] That provision creates a conclusive presumption that independent contractors registered with the CCB are not subject workers. However, subsection (b) was added to ORS 656.027(7) in 1995. Or Laws 1995, ch 216, § 3. During the audit period, no conclusive presumption provision existed. In *HDG Enterprises*, we applied the statute in effect at the time of the audit period and held that "registration with the CCB is not conclusive proof that the registrant is an independent contractor." 121 Or App at 522. Without further discussion we reject petitioner's argument concerning registration with the CCB.[7]

Petitioner's final argument is that the hearings officer lacked substantial evidence to conclude that Roy had paid Gary any wages for the purpose of calculating workers' compensation premiums. The record contains evidence of how

---

[6] ORS 656.027(7)(b) (1999) provides that "[a]ny sole proprietor registered under * * * ORS 701.035 [the independent contractor license provision] and involved in activities subject thereto is conclusively presumed to be an independent contractor."

[7] The dissent also argues that the hearings officer's conclusion that Roy retained the right to control Gary's work does not rationally follow from the hearings officer's characterizations of Gary as a subcontractor. As we have just shown, within the workers' compensation system, it is entirely possible for a subcontractor to be a worker for purposes of a workers' compensation insurance premium assessment. The hearings officer's use of the terms "subcontractor" and "subcontracting" is not inconsistent with his reasoning.

much money Roy paid Gary during the audit period. SAIF billed Roy for Gary's wages at a rate of 50 percent of that amount. SAIF reasoned that, since Gary supplied his own materials and equipment, some of the money Gary received went towards covering expenses and that only the remainder constituted wages. SAIF used the 50 percent wage rate because that is the rate established by the National Council on Compensation Insurance for workers' compensation premiums for construction contractors. We agree with the hearings officer that the money Roy paid Gary constituted wages.

In summary, substantial evidence exists in the record to support the hearings officer's findings of fact. Based on those findings and applying the right to control test, we hold that, as a matter of law, Roy retained the right to direct or control Gary's day-to-day work and that, therefore, Gary was a worker during the audit period. We further hold that Gary was a subject worker during that period. Finally, we also hold that the record demonstrated that Roy paid Gary wages. Accordingly, although for different reasons, we affirm the DCBS's decision to uphold the proposed order assessing Blue Mountain Pools a workers' compensation premium for the audit period.

Affirmed.

**EDMONDS, J.,** dissenting.

The majority concedes that the hearings officer erred in his application of the law in this case. In arriving at his conclusion that Gary was Roy's worker rather than an independent contractor, the hearings officer concluded that the "right to control" test was inconclusive and applied the "nature of the work" test. The hearings officer's conclusion that the analysis under the "right to control" test was inconclusive was error because he conflated the requirements of the "right to control test" and "the nature of the work test." However, the majority relies on the hearings officer's findings, which it finds are supported by substantial evidence, to conclude that Roy had the right to control Gary's day-to-day activities, contrary to the hearings officer's conclusion. Had the hearings officer and the majority applied the law correctly, they would have determined that Gary was an independent contractor under the "right to control test."

According to his opinion, the hearings officer's conclusion is based on the following ultimate findings of fact:

"Roy Stamp did not direct or control the day-to-day work of Gary Stamp.

"Roy Stamp retained the right to direct or control the day-to-day work of Gary Stamp.

"Gary Stamp provided all of his own tools and equipment for performing the work.

"Gary Stamp was paid on an hourly basis and on the basis of the amount of material installed.

"Gary Stamp has one employee while working on jobs for Roy Stamp but did obtain not [sic] workers' compensation until May 24, 1994."

Initially, it is important to note that the hearings officer's "finding" that Roy retained the right to direct or control the day-to-day work of Gary Stamp is not a "finding of fact" but a legal conclusion. When the facts are generally undisputed as they are in this case, the question of "worker" or "independent contractor" status is a question of law. *Woody v. Waibel*, 276 Or 189, 192 n 3, 554 P2d 492 (1976).[1] The answer to whether Roy had the right to control Gary's day-to-day activities is a legal conclusion that is to be reached by applying the applicable law to all of the pertinent facts.

As the court in *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 630, 872 P2d 1 (1994), explained, "[t]he initial determination of whether one is a 'worker' under ORS 656.005(28) continues to incorporate the judicially created 'right to control' test." The application of that test involves several considerations:

"Factors considered by the courts in determining whether a 'right to control' establishes an employment relationship has included, for example: whether the employer retains the right to control the details for the method of performance; the extent of the employer's control over work schedules; and whether the employer has power to discharge the person without liability for breach of contract. Payment of

---

[1] Our opinions have also held that the question of "whether a right to control exists under the facts as found is a question of law for the court." *HDG Enterprises v. Natl. Council on Comp. Ins.*, 121 Or App 513, 518, 856 P2d 1037 (1993).

wages is also a factor, although it is not considered decisive where it is shown that the employee was actually under the control of another person during the progress of work." *S-W Floor Cover Shop*, 318 Or at 622 (citations and internal quotes omitted).

The hearings officer concluded that the fact that Gary provided his own tools and equipment for performing the work supported a conclusion of independent contractor status. He also ruled that the fact that Gary was paid on the basis of the amount of material installed was a neutral factor. Obviously, the findings that Gary had his own employee while working on jobs for Roy and that Roy did not *actually* direct or control the day-to-day work of Gary also support a conclusion of independent contractor rather than worker status. In addition, the hearings officer found that: (1) Gary "had the right to refuse any particular job"; (2) Gary "needed no oversight from Roy * * * to perform this work"; (3) Gary "did business as a sole proprietor under the assumed business name Style Tile"; (4) "[o]ne of the jobs he routinely subcontracted out during the audit period was the finish tile and brick work which he subcontracted to his brother"; (5) Gary "held himself out to perform ceramic tile work on jobs that were not related to his brother's swimming pool construction"; (6) Gary "worked on three jobs during the audit period for persons other than his brother"; (7) "[o]nce Roy * * * had a contract to construct a pool, * * * Gary * * * scheduled the work on his calender"; (8) Gary's "charges were based on the amount of tile or other material installed"; and (9) Gary "was paid after the completion of the work based on a price list that *Gary* established in advance of the job." Finally, there is no evidence of a written contract between Roy and Gary that gives Roy the right to control the day-to-day activities of Gary.

Having made the above findings, the hearings officer was required to apply the proper legal test in order to arrive at a correct conclusion of law. As *S-W Floor Cover Shop* instructs, the hearings officer should have inquired whether the above findings demonstrate that Roy retained the right to go on the job site and could have directed the particulars of how Gary laid the tile and performed the job as any supervisor of a worker would; whether he could have controlled the

hour-by-hour performance of when, where and how Gary worked; and whether he could have discharged Gary in the midst of a job without liability for breach of contract. The right to control the day-to-day activities of a worker is best illustrated by contrasting it with the right to control the end result. The former exists in a "worker" relationship but not in an independent contractor relationship.

As the majority apparently concedes, the hearings officer looked to facts other than those prescribed by the Supreme Court in *S-W Floor Cover Shop* to arrive at a conclusion that Roy retained the right to control. Those facts included: (1) Roy designating which job Gary was to work on; (2) Roy's expectation that Gary would complete the job in accordance with Roy's general specifications; (3) "90 percent of [Gary's] income during the audit period was from performing ceramic tile installation for swimming pools constructed by his brother"; and (4) "[c]ustomers, either general contractors or homeowners, dealt primarily with [Roy]." The majority deems those factors relevant, and, while I agree that they are relevant, they are not legally sufficient as a matter of law to demonstrate "worker" status. Rather, they are characteristic of *both* "independent contractor" and "worker" relationships, and thus do little to inform the inquiry.

Consequently, the majority's deference to the facts relied on by the hearings officer while at the same time properly recognizing that the hearings officer "misconstrued and misapplied" the law is error. When all of the hearings officer's findings are considered, including those relied on by the majority, there is only one correct legal conclusion that can be reached: the employment relationship between Roy and Gary was an independent contractor relationship. That conclusion necessarily follows because Roy retained no express authority to direct or control the day-to-day work, nor did he ever exercise such control during the audit period. What is left to consider is whether Roy had the implicit right to control Gary's day-to-day activities based on the circumstances of their relationship. Those circumstances include the fact that Gary bid on jobs individually and set his own compensation for his work. He was not a salaried employee, but was paid for the work completed. He provided all of his own tools, equipment and materials for the performance of his work. He

could refuse to work or choose to work on a particular job. He determined when he would work. He worked for other people and held himself out as an independent contractor to the public. All of those circumstances are antithetical to "worker" status.

The majority and I also differ regarding the significance of our holding in *Oregon Drywall Systems v. Natl. Council on Comp. Ins.*, 153 Or App 662, 985 P2d 195 (1998). Although it can be said generally that no one case in this area of the law will ever be controlling because of differing circumstances, our precedents can be instructive in what factors to consider in determining whether worker or independent contractor status exists. In *Oregon Drywall*, we held that independent contractor status *existed* as to subcontractors with special expertise and some of whom worked *only* for the employer. 153 Or App at 665, 669. The import of those facts will vary from case-to-case, but our holding in *Oregon Drywall* is instructive on how to view properly the facts in this case in light of the hearings officer's findings that Roy had other workers who could not do tile work and, thus, he was required to "subcontract" that work out to Gary and the majority's emphasis on the fact that 90 percent of Gary's work during the audit period was done for Roy.[2]

At the heart of the dispute between myself and the majority is a concern about where the majority opinion takes the law in this area when it affirms the hearings officer after he misconstrued and misapplied the appropriate legal tests. I am persuaded, based on the provisions of ORS 656.027 (1993); ORS 670.600 (1993) and ORS 656.005(30) and (31) and the Supreme Court's holding in *S-W Floor Cover Shop* that the law requires that a distinction be preserved between "worker" and "independent contractor" status. At stake in the making of that distinction is a policy judgment made by the legislature that the many small businesses who operate as independent subcontractors for general contractors in the building trades all over the state are not subject to the reach

---

[2] The hearings officer did not have the benefit of our opinion in that case when he decided this case.

of the workers' compensation law unless the general contractor exercises more than control over the end result. We frustrate that policy through judicial fiat if we permit the division to adjudicate on a basis that is not in accordance with the legislature's intent. In my view, the facts of this case present a classic example of an independent contractor relationship typically found in the construction industry. For these reasons, I dissent from the affirmance of the hearings officer's ruling that Gary was Roy's "worker."

Landau and Linder, JJ., join in this dissent.