Argued and submitted February 15, Valley Catholic High School, Beaverton, affirmed October 3, 2001

## Jesse W. DEMILLY,
*Appellant,*

*v.*

## BUTLER AMUSEMENTS, INC.,
a California corporation,
*Respondent.*

9809-06686; A108482

33 P3d 343

Gerald C. Doblie argued the cause for appellant. With him on the briefs was Doblie & Associates.

Ruth C. Rocker argued the cause for respondent. With her on the brief was Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiff filed this personal injury action against defendant, Butler Amusements (Butler), for negligence, negligence *per se*, and violation of the Employer Liability Law, ORS 654.305 to ORS 654.335. The trial court granted Butler's motion to bifurcate the trial and first held a bench trial on its affirmative defenses. The trial court agreed with Butler's affirmative defense that plaintiff was a "worker" under the Workers' Compensation Act and that the Act was plaintiff's exclusive remedy. Accordingly, it dismissed plaintiff's complaint and entered judgment for Butler. Plaintiff appeals from that judgment. We affirm.

In June 1997, plaintiff, his brother, and some friends attended the last night of the Portland Rose Festival Fun Center. They rode the Giant Gondola Wheel just before closing. After the ride ended, they were approached by one of Butler's employees, the operator of the gondola. The employee asked them if they wanted to help dismantle the ride that night. The employee told them that the employees had set a record the year before in dismantling the ride and that they wanted to break the record that night. The employee also said that they would all "party" together afterwards. Plaintiff and his brother agreed to do the work.

Butler is a traveling carnival with a full-time, year-round office in Beaverton. Butler employs 12 to 13 full-time administrative employees and employs thousands of seasonal employees. It also hires temporary laborers to assist in dismantling the rides. Butler's typical practice in hiring temporary laborers is to obtain the name, address, and social security number of the temporary laborers on a piece of paper. The laborers are paid minimum wage in cash following the completion of the work.

Plaintiff denies having signed documents or forms. Butler was unable to locate any paper work regarding the laborers who were working for it at the Rose Festival at the time of plaintiff's accident.

Before starting work, Bulter's employee invited plaintiff and his brother to join him underneath the Giant

Gondola Wheel. Once there, the employee produced a pipe that plaintiff believed contained marijuana. Upon inhaling, plaintiff discovered that the pipe, in fact, contained methamphetamine.

Plaintiff and his brother were instructed generally how to perform the disassembly work and were directed how to perform specific tasks. For example, plaintiff testified that he was instructed on how to take the flags off the ride and put them away and how to take down the ramps, railings, and stairs and where to put them. At one point, plaintiff was working at heights greater than 30 feet, got scared, and asked if he could come down. One of Butler's employees told him that he could come down and that they would find something else for plaintiff to do. While 10 feet above the ground, plaintiff was loosening a bolt with a 50-pound monkey wrench supplied by Butler, when plaintiff fell and injured his arm and heel. Soon thereafter, a Butler employee escorted plaintiff's brother to an office trailer on the Rose Festival site where he was paid $36 for his work and given another $36 for plaintiff's work. Plaintiff's brother signed both his name and plaintiff's name on a piece of paper in order to receive the money. Butler was not able to locate this document. Plaintiff's brother kept plaintiff's $36.

A few days after the accident, plaintiff's stepfather, Michael Ratliff, telephoned Butler and spoke with Mary Caspell, Butler's claims manager and assistant administrator. Caspell took notes during this conversation. Those notes indicated that Ratliff told Caspell that his stepson had injured his arm when he fell off a Ferris wheel while working at the Rose Festival. Caspell contacted Joe Yahr, Butler's unit manager and safety director, to verify whether the accident did, in fact, occur. When Yahr confirmed that the accident occurred, Caspell prepared a workers' compensation claim form and forwarded it to Butler's workers' compensation insurance carrier, Liberty Northwest Insurance Corporation. Liberty Northwest had also received a workers' compensation form, labeled "First Medical Report." Liberty Northwest treated both forms as a claim for workers' compensation benefits. Neither form was signed by plaintiff. Liberty Northwest subsequently sent plaintiff a claim history questionnaire. Plaintiff indicated on the form that he was

employed by Butler as a laborer at the time of the injury and that he was paid $5.50 an hour. Plaintiff signed and dated the form twice, indicating that the information he provided was complete and accurate to the best of his knowledge.[1]

Several weeks later, plaintiff received a check from Liberty Northwest but refrained from cashing it until he spoke with an attorney. He told the attorney he wanted to sue Butler. The attorney advised plaintiff that he could cash the check and also sue Butler. Based on that advice, plaintiff cashed the check.

Meanwhile, Liberty Northwest accepted plaintiff's claim for a right forearm fracture and left heel contusion. Liberty Northwest paid plaintiff's costs associated with the injury and time-loss benefits as part of processing plaintiff's workers' compensation claim.

Plaintiff retained new counsel in April 1998. His new attorney wrote Liberty Northwest, stating that he was concerned whether his client was making a fair and accurate claim under the Workers' Compensation Act (the Act). In response to that letter, Liberty Northwest investigated plaintiff's claim and concluded that plaintiff was a worker for an employer within the meaning of the Act and that the claim was properly accepted and processed. The attorney responded that plaintiff was likely a volunteer and not an employee on the date of his injury. Liberty Northwest continued to process the workers' compensation claim even after this action was filed. Plaintiff never refused or returned any of those benefits but filed this case in September 1998.

As previously mentioned, the trial court bifurcated the trial. Butler's affirmative defenses were tried first to the court, because they were potentially dispositive. One of those affirmative defenses was that plaintiff was a worker under the Act and, therefore, Butler was immune from liability. The trial court agreed. On appeal, plaintiff asserts that the trial court erred in holding that plaintiff was a "worker" as that word is defined in ORS 656.005(30).

---

[1] It was actually plaintiff's stepfather who filled out the questionnaire because plaintiff was unable to write with his injured arm. However, plaintiff did sign the questionnaire twice at the end of the form.

■ We review the trial court's findings of fact for any evidence and its legal conclusion as a matter of law. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). We first consider whether plaintiff was a worker. ORS 656.005(30) provides, in part, that a worker is "any person, * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer * * *." *See Martelli v. R.A. Chambers and Associates,* 310 Or 529, 537, 800 P2d 766 (1990).

The trial court concluded that an implied agreement existed between plaintiff and Butler and that both the anticipation of "partying" and the $36 were independently sufficient forms of remuneration to support the conclusion that plaintiff was a "worker." Specifically, the trial court found that Butler did not follow its normal process in hiring plaintiff. However, the trial court found that Butler paid plaintiff $36 in its usual manner—in cash immediately after the conclusion of the labor. Based on those facts, the trial court concluded that an implied agreement existed between plaintiff and Butler. We agree.

■ The facts show that plaintiff agreed to furnish his services to Butler and that Butler in turn accepted those services. Butler also attempted to pay plaintiff $36 by giving it to his brother. That is sufficient to satisfy the first statutory element of furnishing services for remuneration. *See Buckner v. Kennedy's Riding Acad.*, 18 Or App 516, 521, 526 P2d 450, *rev den* (1974). Further, in a questionnaire sent to him by Liberty Northwest, plaintiff said that he was employed by Butler at the time of his injury and that his rate of pay was $5.50 an hour. That response indicates that plaintiff understood that he would be paid for his labor. *See Montez v. Roloff Farms, Inc.*, 175 Or App 532, 536, 28 P3d 1255 (2001) ("A contract for hire that satisfies the 'engagement' requirement of ORS 656.005(30) may be based on either an express or implied contract."); *see also Hix v. SAIF*, 34 Or App 819, 825, 579 P2d 896, *rev den* 284 Or 1 (1978). The trial court did not err in holding that Butler established that plaintiff agreed to furnish services for remuneration.

■ We next consider whether plaintiff was subject to the direction and control of Butler. There are four factors

involved in that question: (1) direct evidence of the right to, or exercise of, control; (2) the furnishing of tools and equipment; (3) method of payment; and (4) right to fire. *Stamp v. DCBS*, 169 Or App 354, 357, 9 P3d 729 (2000). In *Stamp,* we said:

> "No single factor is dispositive in all instances. However, a single factor that indicates an employer-employee relationship may constitute proof of an employment relationship whereas contrary evidence, indicating independent contractor status, is, at best, mildly persuasive and may have no effect at all to a determination of worker status." *Id.* at 360.

Here, Butler's employee instructed plaintiff on how to perform the disassembly work and also directed plaintiff to perform specific tasks. This factor indicates that Butler had a right to control plaintiff's work.

The second factor, the furnishing of tools and equipment, is also resolved in favor of an employment relationship, because Butler provided all the disassembly tools to plaintiff, including the 50-pound monkey wrench he was using when he injured himself.

When the method of payment is by the hour, there is a strong indication of a right to control. *Trabosh v. Washington County*, 140 Or App 159, 165, 915 P2d 1011 (1996). Here, there is evidence that plaintiff was to be paid and was paid $5.50 an hour. This factor weighs in favor of an employment relationship.

The final factor, the right to fire, is neutral because there is no evidence about whether Butler could fire plaintiff. Because three of the four factors weigh in favor of finding that Butler had the right to direct and control plaintiff, we hold that the second statutory element is also satisfied. Plaintiff was a worker for Bulter at the time of the accident.

Accordingly, the trial court did not err in concluding that plaintiff was a worker subject to the provisions of the Workers' Compensation Act at the time of his injury, thus immunizing Butler from liability.

Affirmed.