Argued and submitted April 16, reversed and remanded for entry of judgment in favor of defendant; cross-appeal dismissed as moot October 14, 2009

Kathleen MARSH
and Fariborz Habibi,
*Plaintiffs-Respondents*
*Cross-Appellants,*

*v.*

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
*Defendant-Appellant*
*Cross-Respondent.*

Multnomah County Circuit Court
051213237; A136067

218 P3d 573

R. Daniel Lindahl argued the cause for appellant - cross-respondent. With him on the briefs were Lindahl Law Firm, PC, Ronald J. Clark, and Bullivant Houser Bailey, PC.

John M. Berman argued the cause and filed the briefs for respondents - cross-appellants.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

### EDMONDS, P. J.

Defendant insurer appeals from a judgment for plaintiffs, defendant's insureds, in this case involving the provisions of a homeowners insurance policy. On appeal, defendant asserts that the policy does not provide any coverage for plaintiffs' claim. Plaintiffs cross-appeal, assigning error to the trial court's limitation of their recovery to $5,000. We reverse on appeal and dismiss plaintiffs' cross-appeal as moot.

Plaintiffs own a house that is insured through a policy issued by defendant. The house was constructed in 1977, and plaintiffs purchased it in 2001. Sometime in 2003 or 2004, plaintiffs noticed a musty odor coming from the master bathroom. In 2005, plaintiffs observed problems with the floor of that bathroom; the floor was "mushy" and the toilet rocked back and forth. Prompted by those concerns, plaintiffs hired a contractor to remodel the bathroom. He began work in October 2005. The contractor testified that a leak had occurred in the master bathroom shower that permitted water to penetrate the area under the shower, which caused the subfloor to sustain dry rot.

Plaintiffs made a claim under their policy with defendant to recover the cost of their repairs to the bathroom. Defendant denied the claim on the basis that the damage was not covered under the terms of the policy. Plaintiffs then filed this action against defendant for breach of the policy. The case was tried to the court, and at the end of plaintiffs' case-in-chief, defendant moved for the entry of judgment in its favor, arguing that the policy provisions did not provide coverage for the damage to the bathroom.[1] The trial court denied defendant's motions and instead ruled that there was coverage under the supplemental coverage provisions of the policy, but that the amount of coverage was limited to $5,000. Accordingly, the trial court entered judgment for plaintiffs in that amount and awarded plaintiffs their attorney fees.

---

[1] Although at trial defendant labeled its motions as for directed verdict and for judgment notwithstanding the verdict, it is more accurate to describe defendant's motions as a motion for judgment as a matter of law because there was no jury involved in the trial. Regardless of how we characterize the motion, our standard of review is the same.

On appeal, defendant makes three assignments of error. In its first two assignments, defendant argues that the trial court erred when it ruled that there was coverage for plaintiffs' loss under the terms of the policy. In a third assignment, defendant argues that, because there is no coverage under the policy for plaintiffs' claim, the award of attorney fees must also be reversed. On cross-appeal, plaintiffs argue that they are entitled to the full amount of their damages ($23,737.28) under the terms of the policy and that the trial court erred in limiting their recovery to $5,000.

The terms of the policy that are relevant to our analysis are within the portions of the policy entitled "Oregon Homeowners Policy" and "Oregon Amendatory Homeowners Endorsement." Initially, the policy describes the general geographic coverage area; there is no dispute that the bathroom was within a covered dwelling for purposes of this policy. Part of the coverage provided under the terms of the policy is what the policy describes as "Supplementary Coverages—Section I." That section states, in relevant part:

"We provide the following Supplementary Coverages. These coverages are subject to all terms of this policy, except where modified by the Supplementary Coverage.

"1. Collapse. We cover the risk of direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

"* * * * *

"b. hidden decay

"* * * * *

"Collapse does not include settling, cracking, shrinking, bulging or expansion."

In addition to that provision, the policy contains "Perils Insured Against - Section I," which states, in relevant part:

"Coverage A - Dwelling and Dwelling Extension

"We cover risks of accidental direct physical loss to property described in Coverage A - Dwelling and Dwelling Extension, unless the loss is excluded in this policy.

"Losses Not Covered

"We do not cover loss to the property described in Coverage A - Dwelling and Dwelling Extension resulting directly or indirectly from or caused by one or more of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

"1.   Losses excluded under EXCLUSIONS - SECTION I.

"2.   Collapse, other than as provided in Supplementary Coverages - Section I, under Collapse.

"3.   Continuous or Repeated Seepage or leakage of water or steam from within a plumbing, heating, air-conditioning or automatic fire protection sprinkler system or from within a household appliance which occurs over a period of weeks, months or years.

"* * * * *

"6.   Other Causes of Loss:

"* * * * *

"b.   inherent vice, latent or inherent defect, mechanical break-down;

"c.   smog, rust, corrosion, frost, condensation, mold, wet or dry rot;

"* * * * *

"If any of these cause water or steam to escape from a plumbing, heating, air-conditioning or automatic fire protection sprinkler system or household appliance, we cover loss caused by the water or steam. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.

"We do not cover the loss to the system or appliance from which this water or steam escaped."

In addition to the above provisions in the policy is a provision entitled "Oregon Amendatory Homeowners Endorsement," which provides, in relevant part:

"The following Supplementary Coverage is added:

"Fungi, Wet or Dry Rot or Bacteria. We will pay reasonable and necessary costs for work actually performed to:

"a.  clean up, remove and dispose of fungi, wet or dry rot or bacteria from covered property;

"b.  repair, restore or replace covered property damaged by fungi, wet or dry rot or bacteria;

"* * * * *

"This coverage only applies when the fungi, wet or dry rot or bacteria results in direct physical loss to property covered by this policy.

"Such loss must occur on the insured premises and must be caused by or result from a covered cause of loss under Section I of this policy, during the policy period.

"This limit of $5,000 is the most we will pay for this coverage.

"This coverage does not increase the limit applying to the property.

"No other coverages apply to fungi, wet or dry rot or bacteria.

"The Fungi, Wet or Dry Rot or Bacteria exclusion does not apply to this coverage."

The trial court found from the evidence presented by plaintiffs that the "structure under the shower membrane had deteriorated to the point that it did not provide structural support, and the membrane was supported solely by nails through the * * * studs at its perimeter." The trial court concluded that the damage caused to the structure was so severe that it constituted a "collapse" under the terms of the policy. Having made that finding, the trial court also determined that paragraph 3 of the "Losses Not Covered" section excluded coverage, finding that there had been a "continuous or repeated seepage or leakage of water." However, the trial court determined that there was coverage under the Homeowners Endorsement provisions in the policy regarding fungi, wet or dry rot, or bacteria that was not subject to any exclusion, but the trial court limited recovery under the coverage to $5,000 in accordance with the supplemental coverage limits.

Interpretations of insurance policies are reviewed for errors of law. *Mid-Century Ins. Co. v. Perkins*, 344 Or 196,

203, 179 P3d 633 (2008). Our goal is to determine the intent of the parties, and we look to the terms and conditions of the policy to do so. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). The policy " 'must be viewed by its four corners and considered as a whole.' " *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 24, 22 P3d 739 (2001) (quoting *Denton v. International Health & Life*, 270 Or 444, 449-50, 528 P2d 546 (1974)). All parts and clauses of the policy "must be construed to determine if and how far one clause is modified, limited or controlled by others." *Denton*, 270 Or at 450. On appeal, we accept a trial court's findings of fact if they are supported by any evidence; based on those findings, we review its legal conclusions as a matter of law. *Demilly v. Butler Amusements, Inc.*, 177 Or App 106, 111, 33 P3d 343 (2001).

■ There is evidence to support the trial court's finding that the dry rot under the shower was caused by leakage or seepage of water from the shower over a period of weeks, months, or years. Plaintiffs' contractor testified that the cause of the damage was a leak in the membrane under the shower, a leak that continued over a period of time. Plaintiff Marsh testified that plaintiffs first noticed the instability in the floor in the bathroom before June 2005. That evidence supports the trial court's finding. In addition, the trial court's determination that the exclusion in paragraph 3 of the "Losses Not Covered" in Section I operates to exclude coverage is correct because the damage to plaintiffs' bathroom was caused by "[c]ontinuous or [r]epeated [s]eepage or leakage of water * * * from within a plumbing * * * system * * * which occur[ed] over a period of weeks, months or years."[2]

Nonetheless, plaintiffs argue that the terms of paragraph 3 conflict with the provisions of paragraph 6, that the policy is therefore ambiguous, and, accordingly, that we should interpret the policy against defendant to afford coverage for plaintiffs' loss. *See Hoffman Construction Co.*, 313

---

[2] Consequently, we need not decide whether a "collapse" occurred within the terms of the policy. *Cf. Hennessy v. Mutual of Enumclaw Ins. Co.*, 228 Or App 186, 206 P3d 1184 (2009) (holding that a collapse, under the terms of the policy at issue there, does not require a complete disrepair or falling down of the structure). Even if the trial court erred in determining that a "collapse" occurred in this case, it correctly concluded that the covered loss was otherwise excluded by paragraph 3.

Or at 470-71 (ambiguous terms in an insurance policy should be interpreted against the insurer, who drafted the policy). We are not persuaded by plaintiffs' argument that there is a conflict created by the provisions. Paragraph 6 provides, in part, that, if a defect or mechanical breakdown causes water to escape from a plumbing system, "we cover loss caused by the water or steam." Paragraph 6 would provide coverage generally for loss caused by water. However, paragraph 3 operates to exclude from that coverage loss that is caused by leakage of water *over a period of time*. Because the policy contains a specific exclusion for water damage caused by the continuous leakage of water from a plumbing system, plaintiffs' loss is not covered, even though other types of damage caused by water are covered.

■        We turn to the trial court's determination that the coverage in the Oregon Amendatory Homeowners Endorsement provides coverage, even in light of the exclusion of paragraph 3. The endorsement provides, in part, "Such loss must occur on the insured premises and *must be caused by or result from a covered cause of loss* under Section I of this policy, during the policy period." (Emphasis added.) Because plaintiffs' loss was caused by continuous or repeated leakage of water, a cause that is excluded under paragraph 3 of the "Losses Not Covered" in Section I of the policy, there is no "covered cause of loss" under the policy to which the endorsement applies.

Nonetheless, plaintiffs argue that, because the endorsement provides for coverage for loss caused by "Fungi, or Wet or Dry Rot or Bacteria[,]" and the policy must be interpreted, if possible, to give effect to all of its clauses, "the only way Supplementary Coverage—Dry rot can be given any meaning" is "to interpret it to apply to a 'covered cause of loss' prior to exclusions[.]" Therefore, according to plaintiffs, "Supplemental C—Dry Rot provides additional coverage for dry rot up to $5,000 where coverage would otherwise be excluded."

The above-quoted language in the Endorsement - Supplemental Coverage section of the policy is inconsistent with plaintiffs' interpretation because it predicates coverage on whether the loss covered by the supplemental coverage is

a "covered cause of loss." As pointed out above, the cause of loss in this case is not a covered cause but an excluded cause. As to causes of loss that are potentially covered, such as a loss caused by water other than by leakage over a period of weeks, months, or years, the endorsement provides coverage and therefore is not meaningless, as plaintiffs assert. Furthermore, the endorsement itself states, "The Fungi, Wet or Dry Rot or Bacteria exclusion does not apply to this coverage." The fact that the endorsement provides that a specific exclusion in the policy *does not apply*, implies that other exclusions *do apply*, an understanding that also supports defendant's argument that the exclusion for continuous leakage of water from a plumbing system applies to the endorsement and precludes coverage for plaintiffs' loss.

In summary, we hold that the trial court, based on the circumstances that it found, correctly ruled that the exclusion in paragraph 3 excluded coverage under Section I of the policy. We also conclude that the trial court erred in ruling that there was coverage under the Endorsement provisions of the policy that were not subject to the exclusion in paragraph 3. In light of our disposition of defendant's appeal, we need not address plaintiff's cross-appeal.

Reversed and remanded for entry of judgment in favor of defendant; cross-appeal dismissed as moot.