Argued and submitted November 5, 2001, decision of Court of Appeals and order of Workers' Compensation Board reversed; case remanded to Workers' Compensation Board for further proceedings April 11, 2002

In the Matter of the Compensation of
Raul M. Rubalcaba, Claimant.

Raul M. RUBALCABA,
*Petitioner on Review,*

*v.*

NAGAKI FARMS, INC.
and Paula Insurance Company,
*Respondents on Review.*

(WCB 99-00151; CA A108450; SC S48217)

43 P3d 1106

D. Michael Dale, Legal Aid Services of Oregon, Portland, argued the cause for petitioner on review. With him on the briefs was Diane Schwartz.

David Levine, Sheridan, Bronstein & Levine, Lake Oswego, argued the cause for respondents on review. With him on the briefs was Richard D. Barber, Jr.

Lynn-Marie Crider, Salem, filed the brief for *amici curiae* Oregon AFL-CIO, National Employment Law Project, and the Farmworker Justice Fund. With her on the brief were Rebecca Smith, Catherine K. Ruckelshaus, and Bruce Goldstein.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.**

LEESON, J.

---

** Balmer, J., did not participate in the consideration or decision of this case.

**LEESON, J.**

The issue in this case is whether claimant is a "worker" for purposes of workers' compensation coverage. The Workers' Compensation Board (board) held that claimant was not a "worker" and that, accordingly, he was not entitled to workers' compensation benefits for injuries that he had suffered while working at employer's farm. The Court of Appeals affirmed. *Rubalcaba v. Nagaki Farms, Inc.*, 170 Or App 791, 14 P3d 103 (2000). For the reasons that follow, we reverse the decision of the Court of Appeals and the order of the board.

Claimant was a harvest truck driver. He filed a claim for workers' compensation benefits after severely injuring his arm while working at employer's farm. Employer's insurer denied the claim on the ground that claimant was not a "worker" under the workers' compensation statutes. Claimant requested a hearing, and the administrative law judge (ALJ) made the following findings of fact, which the board adopted in its order:

> "The alleged employer (hereinafter 'employer') is a farmer. He raises wheat, onions, potatoes, and beets. He engages the assistance of persons with trucks during the harvest season to haul vegetables to the appropriate processor as the crops are harvested.
>
> "In 1998 the employer told a man (a Mr. Hernandez) who had been hauling for him several years how many haulers he needed for the harvest. Hernandez contacted claimant, apparently among others, and indicated that there was an opportunity to haul vegetables for the employer. Claimant did not speak directly to the employer regarding his being hired.
>
> "Claimant owns his own truck. He maintains it and buys the gas and insurance for it.
>
> "The employer directed claimant and the other haulers to the field that was being harvested and indicated where to take the produce. He also advised them as to the hours of the harvesting since the haulers followed the harvesting equipment. Some days the employer gave this information directly to the haulers. Other days the employer gave

Hernandez the information and he conveyed it to the haulers.

"Each hauler waited his turn in line and then moved into position to receive produce in his truck from the harvesting crew. The hauler then drove his truck to the processor and returned to the site of the harvest to get in line again.

"In 1998, when the onions were completed at the employer's farm, claimant spent one day hauling for another farm.

"The employer's harvest season generally lasted about six weeks, from early September to mid October. The haulers were paid per load or per ton and received payment at the end of the season. Claimant received only one check from the employer. Claimant was not identified on the books of the employer as an employee. Following 1998, the employer provided claimant with a Form 1099 indicating that claimant had received miscellaneous income from the employer.

"On October 9, 1998, while claimant had his truck on the employer's land, he adjusted a belt in the truck that caused produce to flow from the truck out to the appropriate depository. Claimant's shirttail became caught in the truck's belt. He attempted to free his shirt and used his right hand to do so. His arm became involved with the belt in such a manner that it was severely injured and part of the arm was amputated."

The ALJ also found that, "[p]er his testimony, the employer had the right to discharge claimant."

The question before the ALJ was whether, on those facts, claimant is a "worker" and, therefore, was entitled to workers' compensation benefits for his injury. ORS 656.005(30) defines "worker" as "any person * * * who engages to furnish services for a remuneration, *subject to the direction and control of an employer.*" (Emphasis added.)

The ALJ, concluded that claimant was a worker and that he was entitled to compensation for his injuries. On review, the board reversed. It held that factors relevant to the right to control test[1] conclusively established that claimant

---

[1] Factors relevant to the right to control test have included, for example, whether the employer retains the right to control the details of the method of

was not a "worker" for purposes of workers' compensation coverage. Accordingly, it refused to consider factors relevant to the nature of the work test.[2] As noted, the Court of Appeals affirmed.

Before this court, claimant first argues that, under this court's decisions in *Bowser v. State Indus. Accident Comm.*, 182 Or 42, 185 P2d 891 (1947), and *Woody v. Waibel*, 276 Or 189, 554 P2d 492 (1976), both of which involved the determination of worker status on facts that were similar to this case, he is a "worker" within the meaning of ORS 656.005(30). Employer responds that the board correctly applied the right to control test and that, as a factual matter, employer had no right to control claimant. Moreover, employer contends, the board correctly refused to consider factors relevant to the nature of the work test.

■ Before turning to the first question, namely, whether claimant is a "worker" under ORS 656.005(30), we first address this court's standard of review. The board's determination that claimant is not a "worker" within the meaning of ORS 656.005(30) is a conclusion of law, not a finding of fact. *See Woody*, 276 Or at 192-93 n 3 (question of employee or independent contractor status under workers' compensation statutes is one of law). In this case, the facts are undisputed. We accept, as do the parties, the board's factual findings and review the board's legal conclusion for error of law. *See* ORS 656.298(7) (providing that review of board order shall be as provided in ORS 183.482); ORS 183.482(8)(a) (providing for review for errors of law).

We turn to the merits. In this case, the board determined claimant's employment status as though it were writing on a clean slate. That is, the board applied the factors germane to the right to control test as though this court had not

performance, the extent of the employer's control over work schedules, whether the employer has power to discharge the person without liability for breach of contract, and payment of wages. *S-W Floor Cover Shop v. Nat'l. Council on Comp. Ins.*, 318 Or 614, 622, 872 P2d 1 (1994) (citations ommited).

[2] Factors relevant to the "nature of the work" test have included considerations such as whether the work done is an integral part of the employer's regular business and whether the individual, in relation to the employer's business, is in a business or profession of his or her own. *See Woody v. Waibel*, 276 Or 189, 197-98, 554 P2d 492 (1976) (so stating).

provided any guidance in its case law regarding the meaning of the statutory phrase "subject to the direction and control of an employer" in analogous situations. However, *Bowser* and *Woody* interpreted the statutory definition of "worker" in factual settings that are almost identical to this case. The board's analysis should have considered those interpretations, because, as we discuss below, they are dispositive.

In *Bowser*, the issue was whether a truck driver who used his own truck to haul logs from a loading point to a sawmill was a "workman" within the meaning of OCLA § 102-1703, a predecessor to ORS 656.005(30). Like ORS 656.005(30), that statute defined "workman" as "any person who shall engage to furnish his or her services, *subject to the direction and control* of an employer." (Emphasis added.) This court considered factors relevant to the right to control test, as adapted to the workers' compensation context, by first considering the parties' power to terminate the relationship without incurring contractual liability. *Bowser*, 182 Or at 54. The court explained that the employer's power to terminate was particularly strong evidence of the right to control because "the effect of [the power to terminate] possessed by the company required respondent to conduct his operations at all times as it might please the logging company and its manager." *Id.* at 56.

In considering whether there was direct evidence of control, the court concluded that the indicators were mixed. The employer exercised some control by hiring a log loader and determining the procedure for loading logs, but the claimant provided his own truck, kept it in running condition, and drove from the loading point to the place of delivery without supervision. *Id.* at 58-59, 61. The court downplayed the claimant's independence, however, because there was "no difference at all between [the claimant's] actual situation in so far as control is concerned and the situation of one hired to drive a logging truck and trailer owned and operated by the logging company." *Id.* at 58.

The court then analyzed other factors relevant to the parties' relationship. It reasoned that the fact that the claimant was required to perform only such work as the company

could provide, rather than to perform a specific piece of work, indicated that the claimant was a "workman" for statutory purposes. *Id.* at 63. The court further reasoned that the manner in which the employer entered into contracts with haulers similarly suggested that the claimant fit within the statute. The employer gave the following account of how he hired haulers:

> "Supposing I needed two trucks tomorrow morning, and you was the owner of one of them, and that man sitting there was the owner of the other one. Maybe I would go to you and I would say, 'Well, I need two trucks. Would you come and haul for me?' Well, you would say, 'Well, this man here has got a truck. He isn't working. Maybe he would like to haul.' 'All right. Well, you go to see that guy, and you come out to my landing the next morning, both of you.' But the first thing, before you would come, you could ask me how much a thousand I was paying on these particular hauls. If you figured it was a fair price you would come; if you didn't figure it was a fair price you wouldn't come, because a truck driver if you was owning that truck you would want to make as much as you could, and that is where you would go and haul, if you had the chance to haul."

The court concluded that that testimony "smacks strongly of the hiring of an employee." *Id.* at 62-63.

The court declined to consider whether the employer's mode of compensating the claimant—payment by the board foot hauled—was suggestive of "workman" or independent contractor status, because cases were evenly split on that point and there was sufficient evidence relating to the other factors to conclude that the claimant was a "workman." *Id.* at 60-61. Although the fact that the claimant was required to haul logs exclusively for his employer tended to suggest that the claimant was a "workman," the court held that that factor was "not conclusive," *id.* at 61-62, just as the fact that the claimant provided and maintained his own truck, a factor pointing towards a relationship of independent contractor, was not conclusive, *id.* at 61. Considering all the factors together, the court concluded that the claimant was a "workman" within the meaning of the statute. *Id.* at 65.

In *Woody*, the issue was whether the plaintiff was a "workman" within the meaning of ORS 656.005(28)[3] and, accordingly, was barred, under the exclusive remedy provision of the workers' compensation statute, from maintaining an action for damages against his employer for injuries that he had suffered while hauling logs. 276 Or at 191, 199. Like the statute at issue in this case, that statute defined "workman" as "any person * * * who engages to furnish his services for a remuneration, *subject to the direction and control* of an employer." *Id.* at 196 (emphasis added). *Woody* involved similar facts.

"(a)   Plaintiff and defendant had agreed that plaintiff would haul timber from defendant's logging operation to a destination designated by defendant.

"(b)   That defendant would pay to plaintiff for such hauling so much per thousand based upon the distance of the haul and the grade of the timber. The parties discussed these factors and agreed upon the price to be paid. The plaintiff would be paid every two weeks and would be paid up to 10 days prior to the date of pay.

"(c)   Either party could terminate the agreement to haul timber at any time.

"(d)   The loader was an employee and under the direction of defendant in loading the truck; however, plaintiff had a right to object and have corrected an improper loading.

"(e)   Plaintiff was not restricted to haul only for defendant and in fact on several instances hauled at other places in slack periods or when defendant's 'show' was being moved.

"(f)   Plaintiff provided and was responsible for the operating and all expenses of his own truck and had the right to employ other drivers for the truck.

"(g)   Defendant claims plaintiff was an employee, however, he made no deductions from payment to plaintiff for Workmen's Compensation, Social Security or Income Tax.

---

[3] The legislature renumbered ORS 656.005(28) to ORS 656.005(30) in 1995. Or Laws 1995, ch 332, § 1. The relevant text was not altered.

"(h)   Plaintiff had the entire responsibility, after being loaded, for the delivery to the appointed destination and had the duty to rectify any condition that occurred affecting the ability to deliver.

"(i)   Plaintiff was classified as an independent contractor by the P.U.C., and carried his own insurance. Plaintiff claims he considered himself an independent contractor and further claims, without contradiction, that defendant had previously stated to him that he was not covered by Workmen's Compensation and had to get his own insurance."

*Id.* at 191-92 n 1.

Based on those facts, this court concluded that the employer had the right to control the plaintiff's performance in some respects, but not in others. *Id.* at 197. The court then considered factors relevant to the nature of the work test to determine whether the evidence that the employer retained a right to control the claimant's work was sufficient to conclude that the claimant was a "workman" within the meaning of the statute. *Id.* at 197-98. The court concluded, among other things, that the transportation of timber formed "an essential and regular part" of the defendant's marketing enterprise; that certain aspects of the job, such as loading, required close cooperation between the plaintiff and the defendant's other employees; and that the extent of the plaintiff's work and the corresponding degree of risk to him depended on the defendant's output. *Id.* at 198. The court held that the plaintiff "must * * * be considered an employee for purposes of workmen's compensation." *Woody*, 276 Or at 198.

■      We see no meaningful distinction between the facts in *Bowser* or *Woody* and this case for purposes of applying ORS 656.005(30). As in *Bowser*, employer in this case retained the right to fire claimant without incurring contractual liability, a factor that this court has given great weight in previous cases as suggesting the existence of "worker" status. *See Bowser*, 182 Or at 54-56 (discussing reasons for importance accorded to right to terminate and citing cases).

Second, employer in this case exercised a degree of control over the system for loading its product into the trucks

that is virtually identical to the control that the logging company had exercised in *Bowser*. According to the board's uncontested findings in this case, "[e]ach hauler waited his turn in line and then moved into position to receive produce in his truck from the harvesting crew," and employer "directed claimant and the other haulers to the field that was being harvested and indicated where to take the produce" that had been loaded. As in *Bowser*, there is no suggestion that claimant here had any choice over which load he was going to take. *See Bowser*, 182 Or at 58 (holding that employer's control over which load hauler took "strongly tends to establish the relationship of employer and employee").

Third, claimant did not contract to do piece work for employer and had no written contract of any kind. Like the hauler in *Bowser*, claimant was paid according to how much he hauled, and he had no obligation to haul a specific amount of employer's product. *See id.* at 63 ("respondent was not required to do a specific piece of work, but only as much as the company could provide from day to day"). Fourth, the parties in this case established their relationship in a manner that closely resembles the scenario described in *Bowser*: Both employers used intermediaries to contact haulers as they needed them. In *Bowser*, the court stated that such a hiring method "smack[ed] strongly" of an employer-employee relationship. *Id.*

The factors leaning against employee status also closely resemble those described in *Bowser*. As in *Bowser*, claimant in this case owned and maintained his own truck. However, the court there stated that ownership is not a conclusive factor and held that the claimant was a worker even though he owned his own truck. *See id.* at 63-64 (so stating and citing cases). Likewise, here, employer paid claimant by the volume of produce hauled, a fact that potentially could suggest that claimant was not a "worker." In *Bowser*, however, the court noted that such a method of payment could point in either direction and did not affect the outcome of the case, given the other indicators of employment. *See id.* at 59-61 (so stating and citing authority).

The only relevant distinction between this case and *Bowser* is that, in *Bowser*, the employer had an exclusive hauling agreement with the hauler. *Id.* at 62. However, as noted, that factor is not conclusive. In *Louvring v. Excel Logging Co.*, 280 Or 463, 573 P2d 266 (1977), this court held that a log hauler was a "worker" under the workers' compensation statutes even though "fully a third of the log loads [that he hauled] * * * were for operators other than the [d]efendant." *Id.* at 466. In this case, the undisputed fact is that claimant hauled produce for another farm for only one day after employer's onion harvest was finished. After comparing all the facts, we see no legally significant difference between *Bowser* and this case. As noted, in *Bowser*, this court held that the hauler was a "workman" under the Workmen's Compensation Act and was entitled to compensation. *Bowser*, 182 Or at 65.

This court's subsequent decision in *Woody* also supports the conclusion that claimant was a "worker" under the workers' compensation statutes. As we have explained, in that case, as here, some factors pointed towards control, while others did not. Having found *some* evidence of control, the court then considered the factors relevant to the nature of the work test. *See Woody*, 276 Or at 196 (although control is "essential ingredient" in determining employment status, workers' compensation statutes do not preclude consideration of nature of work factors when some evidence of control exists). One factor relevant to the nature of the work test in *Woody* was how integrated and coordinated the haulers' activity was in the employer's overall production pattern. *See Woody*, 276 Or at 198 (citing 1A *Larson's Workmen's Compensation Law* § 45.22 (1973)). The court noted that "[c]ertain aspects of the job, such as loading, required close cooperation between plaintiff and employees of the defendant." *Id.*

The same is true in this case. According to the uncontested findings, each hauler who worked for employer had to wait his turn in line and then move into position to receive produce in his truck from the harvesting crew. The movements of the trucks had to be coordinated with the availability of produce and the schedule for harvesting. As in *Woody*, claimant's work was "an essential and regular part"

of employer's production of vegetables, a factor suggesting "worker" status. *See id.* at 198 (discussing that factor).

Employer offers no reason why this case differs analytically from *Bowser* or *Woody*. Nonetheless, employer asserts that, under this court's decision in *S-W Floor Cover Shop v. Nat'l. Council on Comp. Ins.*, 318 Or 614, 872 P2d 1 (1994), the board correctly declined to consider the factors concerning the nature of the work. Employer apparently reads *S-W Floor Cover Shop* as having altered the analysis that this court prescribed in *Woody*. Employer is mistaken.

In *S-W Floor Cover Shop*, in a footnote, this court cited *Woody* for the following proposition:

"Where the relationship between the parties cannot be established by the 'right to control' test, it is permissible to turn to the judicially created 'nature of the work' test to determine if an employment relationship exists."

318 Or at 622 n 6. In describing the relationship between the analysis for determining "worker" status as opposed to "subject worker" status, this court also stated:

"The initial determination of whether one is a 'worker' under ORS 656.005(28) continues to incorporate the judicially created 'right to control' test. One who is not a 'worker' under that test is not subject to workers' compensation coverage, and the inquiry ends."

*Id.* at 630. Employer argues that those statements mean that this court views the right to control and nature of the work tests as separate, isolated inquiries, and that the court applies the nature of the work test only if the evidence under the right to control test is so evenly divided that there is no principled way to decide employment status without resort to an additional test.

Neither passage quoted above signaled this court's intent to alter the analytical framework established in *Woody* for determining whether a claimant is a "worker" under the workers' compensation statutes. On the contrary, the footnote in *S-W Floor Cover Shop* cited *Woody* as supporting authority, suggesting that the court viewed *Woody* with approval. Read in context, the phrase "the judicially created 'right to control' test" in the second passage from *S-W Floor*

*Cover Shop* quoted above refers to the analysis for determining "worker" status that this court established in *Woody*. It does not announce a new approach to that matter.

■       Therefore, the question is whether *Woody* prescribes the sequence of analysis that employer urges. It does not. *Woody* makes clear that the phrase, "subject to the direction and control of employer," requires that an employer retain some control over the method and details of a claimant's work if that claimant is to be classified as a "worker" under the workers' compensation statutes. 276 Or at 197. However, when an employer has the right to control a claimant's performance in some respects but not others, "it is essential that we consider the factors which make up the 'nature of work' test" in deciding whether the control that employer retains makes the relationship one of master and servant. *Woody*, 276 Or at 196-97.

In other words, *Woody* does not stand for the proposition that the right to control and nature of the work tests are independent of one another and should be applied hierarchically, or that the nature of the work factors are relevant only in situations in which a claimant's status cannot be determined through application of the right to control test. Rather, *Woody* establishes that, in situations in which there is some evidence suggesting that an employer retained the right to control the method and details of a claimant's work, a conclusion about the claimant's status depends on the analytical factors relevant to both tests. Nothing in *S-W Floor Cover Shop* expressed this court's intent to alter that analytical approach. We reject employer's argument to the contrary.

Employer also suggests that we should revisit the meaning of the phrase "subject to the control of employer" because the workers' compensation statutes have changed since this court's decisions in *Bowser* and *Woody*. That argument lacks merit. Although the legislature has amended the workers' compensation statutes many times in other respects in recent years, the legislature has not changed the definition of "worker" in any relevant respect since *Bowser*. This court's interpretations of that statutory definition in *Bowser* and

*Woody*, therefore, are unaffected by other unrelated statutory changes.

In sum, we hold that the board erred in concluding that claimant in this case is not a "worker" under ORS 656.005(30). Under both *Bowser* and *Woody*, claimant is a "worker" for purposes of ORS 656.005(30).

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.