Argued and submitted July 13, 2006, reversed August 1, petition for review denied November 21, 2007 (343 Or 467)

Marc BOVET,
Jayce Bovet,
and Department of Consumer
and Business Services,
*Petitioners,*

*v.*

Gerritt T. LAW,
*Respondent.*

04-04262; A128373

164 P3d 1186

Benjamin M. Bloom argued the cause for petitioners Marc and Jayce Bovet. With him on the briefs was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Judy C. Lucas, Assistant Attorney General, argued the cause for petitioner Department of Consumer and Business Services. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Richard D. Adams argued the cause for respondent. With him on the brief was David, Adams, Freudenberg, Day & Galli.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

ORTEGA, J.

_____

* Schuman, J., *vice* Ceniceros, S. J.

## ORTEGA, J.

Marc Bovet and Jayce Bovet (the Bovets) and the Department of Consumer and Business Services (DCBS) petition for judicial review of a final order that set aside a nonsubjectivity determination of the Workers' Compensation Division (WCD) based on a finding by an administrative law judge (ALJ) that claimant is a subject worker entitled to workers' compensation coverage for an injury sustained while performing work for the Bovets.[1] We review the pertinent factual findings for substantial evidence and the legal conclusions for errors of law, *Oregon Drywall Systems v. Natl. Council on Comp. Ins.*, 153 Or App 662, 666, 958 P2d 195 (1998).

Claimant bears the burden of establishing the existence of an employment relationship subject to the Workers' Compensation Law. *Hopkins v. Kobos Co.*, 186 Or App 273, 277, 62 P3d 870 (2003). We conclude that, under the Supreme Court's interpretation of the applicable statute, which is part of the statute as though written into it at the time of enactment, *Walther v. SAIF*, 312 Or 147, 149, 817 P2d 292 (1991), the ALJ erred, as a matter of law. We therefore reverse.

The following facts are undisputed. The Bovets purchased a 77-acre parcel of land in Josephine County on which they were building a home. That home construction project was the context for the work that claimant performed. Although in the past Mr. Bovet has earned income from selling real property holdings that he has improved, he testified that he is a search and rescue coordinator and an artist, and

---

[1] DCBS seeks judicial review of its own order pursuant to ORS 656.740(5), which provides, in part:

"Notwithstanding ORS 183.315(1), the issuance of nonsubjectivity determinations, orders declaring a person to be a noncomplying employer or the assessment of civil penalties pursuant to this chapter, the conduct of hearings and the judicial review thereof shall be as provided in ORS chapter 183, except that:

"(a) The order of an Administrative Law Judge in a contested case shall be deemed to be a final order of the director.

"(b) The director shall have the same right to judicial review of the order of an Administrative Law Judge as any person who is adversely affected or aggrieved by such final order."

that he has independent means of support and lives primarily off personal and family investments. He does not consider himself to be a real estate developer and has not made a business out of buying, fixing up, and selling homes for a profit.

The Bovets hired various independent contractors to work on the Josephine County home, where, according to Mr. Bovet, the family planned to live for the foreseeable future. In November 2003, claimant, then age 18, met with the Bovets while he was on the property working for a contractor whom they had hired to do bulldozer work. Following that meeting, the Bovets hired claimant to install shelves in the new barn and later to help one of the contractors build a culvert. After that, claimant proposed a written "Forest Cleanup Contract" to the Bovets under which he would "provide hard work" and the necessary tools to do forest cleanup on the property for $10 an hour. The Bovets agreed, and claimant began work.

Claimant set his own hours and did not check in or out. He presented his hours to Mr. Bovet once a week and was paid in cash. Generally Mr. Bovet told claimant where to work and what to do, and claimant worked at several locations around the property. One afternoon, a contractor asked Mr. Bovet if claimant could work near him clearing brush for the proposed garage site, and he agreed. The next day a snag fell off a burn pile where claimant was working, and he suffered a scalp laceration and fractured his spine in two places.

Claimant filed a workers' compensation claim for his injuries, and the WCD concluded that claimant was not a worker subject to the Workers' Compensation Law. When claimant challenged that determination, however, the ALJ set it aside. The ALJ explained that, even though the evidence was inconclusive regarding whether the Bovets had a right to control claimant's work so as to bring him within the definition of a worker under ORS 656.005(30), the nature of claimant's work brought him within that definition. The ALJ also rejected the Bovets' contention that claimant was a nonsubject worker under the householder exemption of ORS 656.027(2).

■ On judicial review, both the Bovets and DCBS challenge the ALJ's determinations that (1) claimant was a

worker under ORS 656.005(30), and (2) claimant did not fit within the householder exemption in ORS 656.027(2).[2] The question whether claimant is subject to the Workers' Compensation Law first requires a determination of whether he was a worker under ORS 656.005(30). If he was not, the inquiry ends there. A determination that he was a worker triggers analysis of whether he was a nonsubject worker under ORS 656.027 (providing that all workers are subject to ORS chapter 656 except those nonsubject workers described therein, including those fitting the householder exemption addressed by the ALJ in this case). Because we agree that claimant did not meet the definition of a worker under ORS 656.005(30), we reverse without reaching petitioners' challenge to the ALJ's determination regarding application of the householder exemption under ORS 656.027(2).

■     ORS 656.005(30) defines a "[w]orker" as "any person, including a minor whether lawfully or unlawfully employed, who engages to furnish services for a remuneration, subject to the direction and control of an employer * * *." In determining whether a claimant meets that definition, the Supreme Court has held that we must analyze the degree to which the employer exercises a right to control the claimant's work (the "right to control" test) and also the nature of the claimant's work for the employer (the "nature of the work" test). *Rubalcaba v. Nagaki Farms, Inc.*, 333 Or 614, 619-27, 43 P3d 1106 (2002).[3] The two tests are to be applied together: "[I]n situations in which there is some evidence suggesting that an employer retained the right to control the method and details of a claimant's work, a conclusion about the claimant's status depends on the analytical factors relevant to both tests." *Id.* at 627.

We agree with the ALJ that analysis of the Bovets' right to control claimant's work here is inconclusive. On the one hand, claimant provided his own tools, set his own work

    [2] ORS 656.027(2) provides:

    "A worker employed to do gardening, maintenance, repair, remodeling or similar work in or about the private home of the person employing the worker."

    [3] ORS 656.005(30) was renumbered from ORS 656.005(28) in 1995. Or Laws 1995, ch 332, § 1. The relevant text was not altered. Some of the cases discussed in this opinion address the prior version of the statute.

hours, and performed the work in accordance with a contract that he proposed, all factors that we have considered to be indicative of a nonemployment relationship. *See Oregon Drywall Systems*, 153 Or App at 667-68. On the other hand, claimant was paid hourly (which suggests a right to control), and the ALJ found, and the parties do not dispute, that the Bovets retained the right to terminate claimant's employment without any contractual limitation and monitored the means, manner, and method by which claimant completed his work by telling him where to work and what to do on particular days. *See id.*

■■■ Control, the Supreme Court has noted, is the essential ingredient in determining who is a "worker" for purposes of the Worker's Compensation Act. *Woody v. Waibel*, 276 Or 189, 196, 554 P2d 492 (1976). However, where, as here, an employer has the right to control a claimant's performance in some respects but not others, it is appropriate to consider whether the "relative nature of the work" brings claimant's work within the purposes of the act—that is, we apply what has come to be known as the "nature of the work" test.[4] *See Rubalcaba*, 333 Or at 627; *Woody*, 276 Or at 196-97. The Supreme Court has described the basis for that analysis:

> "Starting with the premise that compensation legislation is based upon the theory that the cost of industrial accidents should be borne by the consumer as part of the cost of the product, * * *
>
> " "* * * [i]t follows that any worker whose services form a regular and continuing part of the cost of [a] product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can

---

[4] That test requires consideration, first, of "the character of the [claimant's] work or business—its skill, status as a separate enterprise, and the extent to which it may be expected to carry the burden of its accidents itself[,]" and, second, of "the relation of a [claimant's] work to the employer's business—how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether it is of sufficient duration to be the hiring of continuing services rather than contracting for a particular job." *Stamp v. DCBS*, 169 Or App 354, 358-59, 9 P3d 729 (2000). In concluding that the nature of the work "tip[ped] the balance" in favor of claimant, the ALJ emphasized that "[i]t is hard to expect an unskilled laborer, an unemployed teenager no less, to carry the burden of work accidents * * *."

be channeled, is within the presumptive area of intended protection. * * * 1A Larson's Workmen's Compensation Law § 43.51 (1973).' "

*Woody*, 276 Or at 194-95. The nature of the work test, then, is directly linked to the underlying policy of distributing the costs of doing business to society.

The ALJ applied the nature of the work test without recognizing that the very premise of the test—proper distribution of the costs of doing business—does not exist here, where the Bovets were not engaged in a business. As the Supreme Court explained in *Woody*:

> "We are concerned here only with the relationship between parties where the employer is carrying on a business which is within the coverage of the Work[ers'] Compensation Act; we do not purport to consider the tests to be applied where one not engaged in such business (e.g., a house owner) employs someone to perform work on his premises."

*Id*. at 197 n 11.

Although the ALJ acknowledged that the Bovets "do not have a business *per se*," he emphasized that they have earned a profit from improving and selling their real property in the past. However, there is no evidence that they intended to do so here and, without such evidence, there is no basis for applying the nature of the work test. Accordingly, the ALJ erred in concluding that the nature of the work test "tips the balance towards the conclusion that claimant was a worker for the Bovets under ORS 656.005(30)." Rather, because the evidence is inconclusive under the right to control test and the nature of the work test is inapplicable to this situation, claimant failed to carry his burden of establishing that he is a worker within the meaning of the statute.

Reversed.