246 P.3d 62 (2010)
240 Or. App. 226
DEPARTMENT OF CONSUMER AND BUSINESS SERVICES, Petitioner,
v.
Michael J. CLEMENTS, Respondent.
0500006SD; A141287.
Court of Appeals of Oregon.
Argued and Submitted May 20, 2010.
Decided December 29, 2010.
*63 Karla H. Ferrall argued the cause for petitioner. With her on the brief were John R. *64 Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Rube G. Junes and Clark and Feeney filed the brief for respondent.
Before SCHUMAN, Presiding Judge, and WOLLHEIM, Judge, and ROSENBLUM, Judge.
ROSENBLUM, J.
Claimant filed a workers' compensation claim after sustaining injuries while on a long-haul truck-driving trip with Marshall "Scott" Burch, a partner in Lorelei Transportation. The Workers' Compensation Division (WCD) denied the claim after concluding that claimant was not a subject worker and that Lorelei Transportation was thus not subject to the Workers' Compensation Law. Claimant requested a hearing. An administrative law judge (ALJ) concluded that claimant was a subject worker and entered a final order setting aside the WCD's nonsubjectivity determination. The Department of Consumer and Business Services (DCBS) seeks judicial review of the ALJ's final order.[1] We review the ALJ's findings of fact for substantial evidence and its legal conclusions to determine if they are correct as a matter of law. Oregon Drywall Systems v. Natl. Council on Comp. Ins., 153 Or.App. 662, 666, 958 P.2d 195 (1998). We do not disturb the ALJ's conclusion that claimant was a "worker" for purposes of the Workers' Compensation Law. However, we conclude that the ALJ erred in the analysis of whether claimant was a "subject worker," and we therefore reverse and remand for reconsideration.
The basic facts are uncontested. In 1992, Scott and Lorelei Burch formed a commercial trucking business, Lorelei Transportation, which they ran as partners. The couple owned a tractor-trailer that they used to haul freight. Scott primarily drove the tractor-trailer, although Lorelei would also sometimes drive in "tandem" with him.
Claimant was a family friend of the Burches who had grown up with their son and had done some unpaid work at the Burches' ranch over the years. During the first week of January 2005, when claimant was 20 years old, he went to stay with the Burches because of some conflicts in his own family. A few days after arriving, claimant expressed his interest in a career in trucking to Scott and asked if he could accompany him on an interstate trucking job to Washington, then to the southeastern United States and back to the Pacific Northwest. Scott agreed that he could come along on the trip. There was no understanding between Scott and claimant of how long, in terms of time or distance, the trip would be.
Scott considered the trip to be a trial period to see if he and claimant "could get along and run team." Although claimant did not discuss specific compensation with Scott before or during the trip and did not consider himself an "employee" of Lorelei Trucking when he and Scott left, claimant did not consider the trip a "charity ride" and did expect that Scott would cover his expenses and would pay him something when the trip was over. Scott, too, anticipated that he would cover claimant's expenses. Before the trip began, Scott paid $56 so that claimant could reinstate his regular driver's license.
The two men left Oregon together on January 5, 2005. During the trip, claimant often asked Scott if he could drive, and Scott allowed him to do so, as much as 20 to 25 percent of the time. Claimant did not yet have his commercial driver's license; therefore, Scott told claimant that, if they were pulled over while claimant was driving, claimant *65 would have to pay any fines associated with driving without a proper license. Before each time that claimant began driving, Scott would direct claimant to do a walk around the tractor and trailer to look for leaks underneath the tractor and to make sure that the straps on the trailer were tight. Claimant also helped with inspecting and "tightening" loads at Scott's direction. Scott showed claimant how to fill out "log books," although claimant never filled out any on his own.
Claimant was not "paid" anything in terms of wages or a share of the profits during or after the trip, but Scott did pay, usually in cash, for all claimant's meals, cigarettes, and, when necessary, lodging. On nights when Scott did not pay for a motel, Scott and claimant slept either in the sleeping berth of Scott's tractor or in the homes of Scott's relatives. Scott would sometimes give claimant small amounts of cash to buy cigarettes and other small items for both of them. Once, outside of Seattle, Scott gave claimant $100 cash, which claimant assumed was "for driving." When claimant asked what the money was for, Scott did not respond.
After the trip, Scott did not recall how much cash he had had with him or how much he spent while on the trip. Scott did not remember "expensing" the costs he paid for claimant in his business records, nor did he generally keep receipts for the food that he provided claimant. Scott did not have any receipts from nights that he and claimant stayed in a motel room.
On January 22, 2005, on their way back from the Southeast, claimant was driving the tractor-trailer in Idaho when it was involved in an accident with another tractor-trailer. Both Scott and claimant sustained severe injuries. Claimant filed a workers' compensation claim for his injuries, but the WCD concluded that claimant was not a "subject worker" for purposes of the Workers' Compensation Law. When claimant challenged that determination, the ALJ set it aside. The ALJ first considered whether claimant was a "worker" within the meaning of the Workers' Compensation Law, describing the inquiry in this way:
"Pursuant to ORS 656.005(30), a `worker' is a person who engages to furnish services for remuneration subject to the direction and control of an employer. Determining whether an individual is a `worker,' depends on whether the employer had a right to control the individual under the judicially created `right to control' test. S-W Floor Cover Shop v. Nat'l Council on Comp. Ins., 318 Or. 614, 630-631 [872 P.2d 1] (1994)."
The ALJ then discussed evidence in the record regarding the "right to control" and determined that the evidence indeed established that the Burches had a right to control claimant, and that claimant was a "worker" for purposes of ORS 656.005(30).
The ALJ then considered the effect of ORS 656.027, which governs whether a "worker" is a "subject worker" for purposes of the Workers' Compensation Law. The pertinent part of that statute, which we later discuss in more detail, specifies that all "workers" are subject to the Workers' Compensation Law, except for certain "casual" workers who are employed in the course of the trade, business, or profession of a "nonsubject employer." The ALJ determined that the "casual worker" exception did not apply, because, even if claimant's employment was "casual," Lorelei Transportation was not a "nonsubject employer." Thus, the ALJ determined that claimant was indeed a "subject worker" and remanded to the WCD for further processing of the claim.
On judicial review, DCBS challenges the ALJ's order in several respects. Initially, DCBS argues that the ALJ erred in concluding that claimant was a "worker" within the meaning of ORS 656.005(30). That argument is two-fold. DCBS contends that the ALJ (1) skipped the primary part of the legal test ("services for a remuneration") and (2) misapplied the second part ("subject to the direction and control of an employer"). DCBS further argues that the ALJ misapplied the casual worker exception in ORS 656.027(3), because Lorelei Transportation was a "nonsubject employer." We conclude that the ALJ's order did not err with respect to the application of the definition of "worker" in ORS 656.005(30). However, we agree with *66 DCBS that the ALJ misinterpreted the law regarding "subject workers" under ORS 656.027more specifically, the portion of the casual worker exception requiring that claimant be employed by a "nonsubject employer."
Before addressing the merits of this case, a brief overview of the applicable statutes is helpful. Under the Workers' Compensation Law, for a claimant to be a "subject worker" under ORS 656.027, he must first be a "worker" under ORS 656.005(30). See also ORS 656.005(28) ("`Subject worker' means a worker who is subject to this chapter as provided by ORS 656.027."). That is, one who is not a "worker" under that statute is not subject to workers' compensation coverage, and the inquiry ends there. S-W Floor Cover Shop, 318 Or. at 630, 872 P.2d 1.[2] A determination that claimant qualified as a "worker" then triggers an analysis of whether claimant was "nonsubject" under one of the exceptions provided in the "subject worker" statute, ORS 656.027 (which provides that all workers are "subject workers" except those nonsubject workers described therein). Bovet, 214 Or.App. at 353, 164 P.3d 1186. ORS 656.027(3)(a), the "casual worker exception," in part, excepts from workers' compensation coverage those workers who are "casual" and whose employment is in the course of the trade, business, or profession of a nonsubject employer. Whether an employer is considered subject or nonsubject, in turn, depends on whether the employer employs "subject workers." ORS 656.023 ("[e]very employer employing one or more subject workers in the state is subject to this chapter").
We begin with the ALJ's conclusion that claimant was a "worker." ORS 656.005(30) defines a "worker" as any person who "engages to furnish services for a remuneration, subject to the direction and control of an employer * * *." The statute, we have explained, has two components: (1) "an agreement between the claimant and the employer that the employer will provide remuneration for the claimant's services," and (2) "the employer's right to direct and control the services the claimant provides." Hopkins v. Kobos Co., 186 Or.App. 273, 276-77, 62 P.3d 870 (2003). As an initial matter, DCBS contends that the ALJ simply "failed to consider the first element" of the statutory testi.e., whether claimant and Lorelei Transportation agreed that claimant would provide services in exchange for remuneration.
Although the ALJ's order does not analyze separately the two different components of the "worker" test, we are not persuaded that the ALJ failed to consider the first part of the test. The ALJ's order recites the relevant text of the statute and, following that recitation, discusses whether there is evidence of "monetary `remuneration' from the Burches to claimant. ORS 656.005(30)." That discussion occurs within a broader discussion of the "right to control," but we are nonetheless satisfied that the ALJ understood the applicable statute, applied the proper test in determining whether claimant was a "worker," and determinedimplicitly, at the very leastthat claimant and the Burches agreed that claimant would provide services for remuneration.
We likewise conclude that the ALJ's order was supported by substantial evidence in that regard. Claimant furnished his services to Scott by driving 20 to 25 percent of the time prior to their accident. Scott accepted those services by allowing him to drive, and Scott provided remuneration to claimant in the form of food, lodging, cash for cigarettes, and $100 in cash. That is sufficient to satisfy the statutory element of engaging to furnish services for remuneration. See Demilly v. Butler Amusements, Inc., 177 Or.App. 106, 111, 33 P.3d 343 (2001); Buckner v. Kennedy's Riding Acad., 18 Or.App. 516, 521, 526 P.2d 450, rev. den. (1974) (implied contract found where girls who did chores in horse stables were remunerated with lunches, free use of horses for riding, and an occasional payment of a couple of dollars).
*67 The record also contains evidence that Scott paid $56 to reinstate claimant's regular driver's license before the trip and considered the trip a "trial run" for which both parties anticipated that Scott would cover claimant's expenses. We are not troubled by the fact that there was no discussion of compensation with claimant or pre-employment screening done with him before the trip, "since the law will imply an obligation to pay a reasonable amount for services performed and accepted." 3 Larsens Workers Compensation Law § 65.02[1]; Demilly, 177 Or.App. at 111, 33 P.3d 343 (defendant's failure to follow normal process in hiring plaintiff not dispositive of the issue). In sum, there was substantial evidence in the record that claimant was engaged by Lorelei Transportation to furnish services for remuneration.
We turn, then, to DCBS's contention regarding the second part of the "worker" test: that the ALJ erred in concluding that claimant was "subject to the direction and control" of Lorelei Transportation. ORS 656.005(30). Whether a claimant is subject to the direction or control of the employer is determined by applying the "right to control" test.[3] The "right to control" test has four factors: "(1) direct evidence of the right to, or exercise of, control; (2) the furnishing of tools and equipment; (3) the method of payment; and (4) the right to fire." Stamp v. DCBS, 169 Or.App. 354, 357, 9 P.3d 729 (2000). Although no single factor is dispositive in all instances, a single factor indicating an employer-employee relationship can be sufficient to demonstrate an employment relationship. Id. at 360, 9 P.3d 729.
With respect to the first element direct evidence of the right to, or exercise of, controlthe ALJ determined that Scott exercised control by "letting or directing claimant to drive" and by having claimant help with inspecting and securing loads during the trip. DCBS argues that the ALJ erred in that regard, because "letting" claimant drive is not sufficient to show control and the record does not demonstrate that Scott ever "directed" claimant to drive.
Under the first factor of the "right to control" test, actual exercise of control by the employer is not necessary; evidence of the employer's right to control is sufficient. Great American Ins. v. General Ins., 257 Or. 62, 66-67, 475 P.2d 415 (1970). Here, Scott owned the tractor-trailer and arranged the interstate work trip that he allowed claimant to join him on. Each time claimant drove the tractor-trailer during the trip, he first asked Scott if he could do so. There is no evidence in the record that claimant ever drove the truck without first asking Scott if he could drive. Even absent evidence that Scott ever "directed" claimant to drive, we find those facts sufficient to show that Scott had the right to, and in fact did, exercise control over claimant, because claimant always had to ask before he could drive, and because Scott always had the right to say no. Likewise, Scott retained the right to tell claimant to stop driving at any time and for any reason. Further, there is sufficient evidence in the record to show that, before each time that claimant began driving, Scott would direct him to walk around the tractor and trailer to look for leaks underneath the tractor and to make sure that the straps on the trailer were tight. We conclude, based on those facts, that there was direct evidence of the right to and exercise of control by Scott over claimant.
The second factor"the furnishing of equipment"likewise supports the ALJ's determination that claimant was a "worker." Evidence in the record indicates that Scott provided all the equipment for the trip.
The third and fourth factors of the "right to control" test are neutral. With respect to the third factor, "method of payment," claimant was not paid an hourly wage (which would have suggested worker status), nor was he paid a fixed sum for a particular project (which would have suggested nonworker status). Bovet, 214 Or.App. at 354, *68 164 P.3d 1186; Bob Wilkes Falling v. Natl. Council on Comp. Ins., 129 Or.App. 220, 225, 878 P.2d 1136 (1994). In this case, claimant was remunerated through food, lodging, and occasional sums of money, the amount of which was always determined by Scott. Under those circumstances, the method of payment does not militate strongly in either direction. Coghill v. Natl. Council on Comp. Ins., 155 Or.App. 601, 607, 964 P.2d 1085, adhered to on recons., 157 Or.App. 125, 966 P.2d 830 (1998), rev. den., 328 Or. 365, 987 P.2d 510 (1999). As for the fourth factor, the right to terminate, there was no written contract or other evidence in the record indicating that Scott had a right to fire claimant. Thus, we agree with the ALJ that the fourth factor was neutral as well. Stamp, 169 Or. App. at 363, 9 P.3d 729.
We are persuaded that the factors, taken as a whole, support the ALJ's determination that Lorelei Transportation had the "right to control" claimant. For that reason, and the others discussed above, the ALJ did not err in concluding that claimant was a "worker" under ORS 656.005(30).
That takes us to the ALJ's subsequent conclusion regarding the casual worker exception in ORS 656.027(3)(a)(B). As noted above, the ALJ determined that claimant was not excepted from workers' compensation coverage under ORS 656.027, and was, therefore, a "subject worker" under the Workers' Compensation Law. ORS 656.027 provides, in pertinent part:
"All workers are subject to this chapter except those nonsubject workers described in the following subsections:
"* * * * *
"(3)(a) A worker whose employment is casual and * * *:
"* * * * *
"(B) The employment is in the course of the trade, business or profession of a nonsubject employer.
"(b) For the purpose of this subsection, `casual' refers only to employments where the work in any 30-day period, without regard to the number of workers employed, involves a total labor cost of less than $500."
For purposes of subparagraph (B) of the statute, the term "nonsubject employer" derives its meaning from ORS 656.023, which states that "[e]very employer employing one or more subject workers in the state is subject to this chapter."
Once again, the ALJ concluded that, regardless of whether claimant's work was "casual," he had not performed that work for a "nonsubject" employer. According to DCBS, the ALJ reasoned that the company was a "subject employer" because it employed at least one "subject worker": claimant. That reasoning, DCBS argues, is circular, because the ALJ assumed the conclusion of the very dispute at hand, namely, whether claimant is actually a "subject worker." Claimant, meanwhile, agrees with the ALJ, reasoning that, "because claimant qualifies as a subject worker who also happens to be the first and only such worker[,] he therefore works for a subject employer." On this issue, we agree with DCBS.
The internal logic of the Workers' Compensation Law, as explained by the Supreme Court, requires the determination of whether one is a "worker" under ORS 656.005(30) to be made before it can be determined if that person is a "subject" or "nonsubject" worker under ORS 656.027. S-W Floor Cover Shop, 318 Or. at 630, 872 P.2d 1. We read the progression of the statutory language to similarly require us to determine whether an employer is "subject or nonsubject" under ORS 656.023 before we can determine whether that employer's worker who is applying for workers' compensation is employed by a "nonsubject" employer. See ORS 656.027(3)(a)(B) (a worker is a nonsubject employee if his employment is casual and he is employed in the course of the trade, business, or profession of a nonsubject employer). Therefore, because ORS 656.023 states that a "subject employer" is one who employs one or more "subject workers," the employee whose status as a "subject worker" is still in question cannot be counted as the only "subject worker" of that employer for purposes of ORS 656.023 or ORS 656.027(3). See Bisbey v. Thedford, 68 Or.App. 200, 203, 680 P.2d 1003 (1984) (hotel that had no other subject employees was not a subject employer at time of claimant's injury); Konell v. *69 Konell, 48 Or.App. 551, 557-58, 617 P.2d 313 (1980) (similar).
Scott and Lorelei Burch owned Lorelei Transportation as partners. Neither Scott nor Lorelei was the employee of the other, and they did not have any other subject employees at the time of claimant's injury. Therefore, Lorelei Transportation was a "nonsubject" employer. ORS 656.023; ORS 656.027(8). See Cortes v. Wyland, 107 Or. App. 218, 222, 810 P.2d 1349 (1991). The ALJ erred in concluding otherwise.
Under ORS 656.027(3), Lorelei Transportation's status as a "nonsubject employer" is only part of the "casual worker" exception. In order for the exception to apply, claimant's work for a "nonsubject employer" must be "casual" within the meaning of ORS 656.027(3)(a). As a result of his conclusion that Lorelei Transportation was a "subject" rather than a "nonsubject employer," the ALJ did not reach the question of whether claimant's work was "casual." We therefore remand in order for the ALJ to address that question in the first instance.
Reversed and remanded.
NOTES
[1] DCBS seeks review of its own order pursuant to ORS 656.740(5), which provides, in part:

"Notwithstanding ORS 183.315(1), the issuance of nonsubjectivity determinations, orders declaring a person to be a noncomplying employer or the assessment of civil penalties pursuant to this chapter, the conduct of hearings and the judicial review thereof shall be as provided in ORS chapter 183, except that:
"(a) The order of an Administrative Law Judge in a contested case shall be deemed to be a final order of the director.
"(b) The director shall have the same right to judicial review of the order of an Administrative Law Judge as any person who is adversely affected or aggrieved by such final order."
See also Bovet v. Law, 214 Or.App. 349, 351, 164 P.3d 1186, rev. den., 343 Or. 467, 172 P.3d 249 (2007) (describing review of DCBS orders).
[2] ORS 656.005(30) was renumbered from ORS 656.005(28) in 1995, Or. Laws 1995, ch. 332, § 1, and has been renumbered at multiple other times throughout the years. Further, before appearing in ORS 656.005, the definition of "worker," as it is relevant to this case, appeared in ORS 656.002(14). Or. Laws 1975, ch. 556, §§ 2-19. The relevant text has not been altered. For convenience, when discussing the cases, we refer to the statute by its current numbering.
[3] If there is evidence that the employer has a right to control the methods and details of claimant's work in some respects but not others, we also apply the "nature of the work" test. Rubalcaba v. Nagaki Farms, Inc., 333 Or. 614, 619-27, 43 P.3d 1106 (2002). Because Scott had a right to control claimant's work, we need not reach the "nature of the work" test. Oregon Drywall Systems, 153 Or.App. at 669, 958 P.2d 195.