Argued and submitted April 26, reversed and remanded June 14, petition for
review allowed October 19, 2017 (362 Or 94)

In the Matter of the Compensation of
Cozmin I. Gadalean, Claimant.

## Cozmin I. GADALEAN,
*Petitioner,*

*v.*

## SAIF CORPORATION
and Imperial Trucking, Inc.,
*Respondents.*

Workers' Compensation Board
1403356; A161887

398 P3d 503

Julene M. Quinn argued the cause and filed the briefs for petitioner.

Lea Kear argued the cause and filed the brief for respondents.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

Claimant seeks judicial review of a Workers' Compensation Board order that concluded that claimant was not eligible for benefits because he was not a "subject worker" at the time of his injury. The issue on appeal is whether the board correctly ruled that claimant was not a worker at the relevant time because he was engaged in a pre-employment evaluation. Claimant acknowledges that he was engaged in an evaluation in anticipation of permanent employment, but contends that, in the course of that evaluation, he was actually "put to work" and performed services for employer, which is sufficient to establish that he "engage[d] to furnish services for a remuneration" within the meaning of ORS 656.005(30).[1] We agree with claimant, and reverse and remand the board's order.

The relevant facts are taken from the board's order on reconsideration. Claimant applied for a position as a truck driver. Employer's owner, Van Hyning, invited claimant to his office for an interview, where they discussed claimant's application and the requirements of the job. Consistently with employer's customary practice, claimant then participated in a "safe driving test" that involved performing an actual delivery in a "real-world situation[] with an experienced driver." Claimant drove one of employer's delivery trucks, with a full-time employee, Hanson, as a passenger, to a designated delivery location approximately 30 miles away. In the course of disconnecting hoses from the trailer, claimant fell and injured his hip. Because claimant's injury rendered him unable to drive, Hanson drove to the next stop, where they picked up an empty container before returning to employer's premises.

The record reflects that employer was most likely paid for the delivery that occurred during claimant's test.[2]

---

[1] ORS 656.005(30) defines "worker" as "any person, including a minor whether lawfully or unlawfully employed, who engages to furnish services for a remuneration, subject to the direction and control of an employer * * *." Under the Workers' Compensation Law, in order to be a "subject worker" under ORS 656.027, a claimant must first be a "worker" under ORS 656.005(30). *DCBS v. Clements*, 240 Or App 226, 231, 246 P3d 62 (2010).

[2] At the administrative hearing, when asked whether employer was paid for the delivery, Van Hyning answered "I would assume so, yes."

Hanson was compensated for his time accompanying claimant. According to Van Hyning, both things would have been true if claimant had not been present; the only difference that claimant's presence made was that Hanson had the opportunity to observe and evaluate his driving. Van Hyning thus testified that employer received no benefit from claimant's participation in the delivery that day. Claimant was not hired.

SAIF denied claimant's claim for a left hip injury on the ground that claimant was not a subject worker at the time of his injury. An administrative law judge upheld SAIF's denial; a divided panel of the board affirmed. The majority concluded that, because claimant was engaged in a pre-employment evaluation with only the possibility of future employment, he had not established that he was "engage[d] to furnish services for a remuneration" under ORS 656.005(30). The dissenting board member reasoned that claimant had provided actual services for which employer was compensated, thus establishing an implied-in-law contract that was sufficient to make claimant a worker entitled to benefits.

Whether a claimant is a "worker" under ORS 656.005(30) is a question of law that we review for legal error under ORS 183.482(8)(a). *Rubalcaba v. Nagaki Farms, Inc.*, 333 Or 614, 619, 43 P3d 1106 (2002). The board's predicate factual findings are reviewed for substantial evidence. ORS 656.298(7) (providing that review of board orders shall be as provided in ORS 183.482); ORS 183.482(8)(c) (providing for substantial evidence review).

SAIF relies principally on the board's finding—predicated, in part, on its express credibility findings—that the parties had made no "agreement" for remuneration at the time that claimant performed his driving test. Even accepting that as true, we conclude that it is legally irrelevant, because the law implies the existence of an agreement in this circumstance.

Our conclusion flows from two principles. First, in the absence of specific statutory exemptions—which undisputedly do not apply to this case—a person must be paid a wage for work. That is the point of the minimum wage

statute, ORS 653.025. Thus, if claimant was put to work for employer, even if only for a brief period of time, it does not matter that the parties did not agree as to remuneration. The law requires it.

Second, what claimant did that day was "work" as a matter of law, regardless of whether employer also had the subjective or even primary purpose of evaluating him in anticipation of permanent employment. That is so because it is undisputed—and employer concedes—that the *nature* of claimant's activity was work. He performed an actual delivery, for which employer presumably was paid. According to Van Hyning, if claimant had been on the payroll at the time, he would have been paid for that activity, as Hanson was. Those facts are sufficient to establish that claimant was put to work.

Because claimant was put to work for employer, the law implies the existence of a contract. The board majority recognized that an implied-in-law contract can be sufficient under ORS 656.005(30) to establish an agreement to provide "services for a remuneration." *See Montez v. Roloff Farms, Inc.,* 175 Or App 532, 536, 28 P3d 1255 (2001) ("A contract for hire that satisfies the 'engagement' requirement of ORS 656.005(30) may be based on either an express or implied contract."); *Staley v. Taylor,* 165 Or App 256, 262, 994 P2d 1220 (2000) (the term "implied contract" refers either to a contract implied in fact or to one implied in law; the latter obligation is created "'by the law for reasons of justice, without any expression of assent'" (quoting Arthur Linton Corbin, 1 *Corbin on Contracts* § 19, 46 (1963))). The board majority concluded, however, that such an implied contract was not created here. Neither reason cited by the majority is persuasive.

First, the majority reasoned that the purpose of claimant's activities was to test his driving, and that employers must have the ability to require such tests before hiring. We agree that an employer may require a job applicant, without paying that person for his time, to take a test as part of the application process. *See, e.g., BBC Brown Boveri v. Lusk,* 108 Or App 623, 816 P2d 1183 (1991) (the claimant, who failed a pre-employment welding test for a position as a boiler maker, was not performing services for remuneration and was not a "worker"); *Dykes v. SAIF,* 47 Or App 187, 613

P2d 1106 (1980) (the claimant did not furnish services "for a remuneration" where the claimant broke his leg during a pre-employment agility test for a position as a deputy sheriff). A person does not become a "worker" by taking a pre-employment test designed to gauge his qualifications for a position. *See Dykes*, 47 Or App at 190.

What differentiates those cases, on which the board relied, from this one is that claimant's "evaluation" involved being put to *work*. Although the employer may have had the primary purpose of evaluating claimant for future permanent employment, that does not mean that claimant did not also perform work for employer that day.

The second reason cited by the board is Van Hyning's assertion that employer received no "benefit" from claimant's activity. The record compels the opposite conclusion. The employer conceded that claimant performed the activities of a regularly employed driver, that the delivery was performed in the ordinary course of employer's business, and that employer was probably compensated for the delivery. Employer also received the benefit of being able to evaluate claimant's driving without disrupting its ordinary delivery schedule or expending resources to administer a separate driving test.

In short, on the facts of this case, claimant furnished services to employer, and the law therefore implies an obligation to pay him remuneration.[3] Thus, claimant was "engage[d] to furnish services for a remuneration" under ORS 656.005(30), and the board erred in concluding otherwise.

Reversed and remanded.

---

[3] This court's recent decision in *Rehfeld v. Sedgwick Claims Management Services*, 283 Or App 288, 388 P3d 403, *rev den*, 361 Or 524 (2017) (declining to look to minimum-wage laws in calculating a claimant's temporary disability benefits), is not to the contrary. In that case, we explained that a claimant's entitlement to receive minimum wage under ORS chapter 653 has no bearing on the calculation of that claimant's benefits for temporary disability under workers' compensation law. *Id.* at 293-94. We expressed no opinion as to the materiality of minimum-wage law to the determination of whether a claimant qualifies as a "worker" in the first instance. *See id.* at 290 n 2 (explaining that we had previously "affirmed without opinion the board's order determining that claimant was a subject worker and that the claim was compensable").