Argued and submitted April 6, reversed and remanded August 1, 2001

In the Matter of the Compensation of
Audencia Montez, Claimant.

Audencia MONTEZ,
*Petitioner,*

*v.*

ROLOFF FARMS, INC.,
SAIF Corporation, Roloff Bros., Inc.,
and Paula Insurance Co.,
*Respondents.*

99-06577 and 99-02429; A110500

28 P3d 1255

R. Adian Martin argued the cause and filed the brief for petitioner.

Jerome P. Larkin argued the cause and filed the brief for respondents Roloff Farms, Inc., and SAIF Corporation.

Richard D. Barber and Sheridan, Bronstein & Levine filed the brief for respondents Roloff Bros., Inc., and Paula Insurance.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

### SCHUMAN, J.

While picking cherries at Roloff Farms, Inc. (employer), claimant fell from a ladder and fractured a finger. She applied for workers' compensation. Employer's insurer, SAIF, found that she was not employed by employer at the time of the injury and denied her claim. At the hearing on that denial, the sole issue was whether employer had "engaged [claimant] to furnish services for remuneration" under ORS 656.005(30). The administrative law judge (ALJ) and subsequently the Workers' Compensation Board affirmed SAIF's denial. We reverse and remand.

The parties presented conflicting testimony before the ALJ concerning claimant's participation in employer's hiring process for farm workers. SAIF argued that claimant and her son applied for work together on June 11, 1999, but because her son did not have proper identification with him at the time, claimant was told to return with her son's identification and then watch a safety video before beginning work. Claimant testified that she was never told to watch a video; rather, she was told to go to work immediately after completing the application forms. The parties agree that claimant filled out the application forms, did not watch the video, and did not return with her son's identification. Instead, she went to the orchard and began picking cherries. She continued to pick cherries at employer's farm for six to seven days before she was injured.

Claimant also presented uncontradicted evidence that employer's foreman and other supervisory employees showed her where to pick, instructed her not to bruise or drop the cherries, supplied her with the necessary ladders and boxes, told her when to stop working each day, and paid her for her work under her husband's picking number.

Thus, claimant presented two arguments to the ALJ: first, that she was an employee because she successfully completed the hiring process and was, in fact, hired on June 11, 1999; and second, that she was an employee by virtue of an implied contract arising out of her work for employer, with its knowledge, for six or seven days after the disputed hiring process took place. *See Oremus v. Ore. Pub. Co.,* 11 Or App

444, 446, 503 P2d 722 (1972) (implied contract sufficient basis for conclusion that a person is a covered worker). The ALJ apparently rejected both of those theories, finding that

"the employer was not even aware that claimant and her son were picking cherries and, further, claimant and her son had never completed the hiring process. The evidence is overwhelming that the claimant and her son were never hired by this employer. The evidence is also clear that the employer had no knowledge that the claimant and her son were picking its cherries."

On review of the ALJ's order, the Board concluded:

"Here, the parties agree that claimant completed her W-4 and I-9 forms, with Mr. Roloff's help, on June 11, 1999. Claimant testified that Mr. Roloff then told her to go to work. Mr. Roloff testified that he did not hire her at that time because 'she hadn't seen the video.'

"Mr. and Mrs. Roloff and Irene Nunez, the employer's translator, testified that claimant was informed that she must watch a safety video before going to work. Mrs. Roloff and Ms. Nunez also stated that they specifically instructed claimant to go home and get her son's identification, then return and watch the video before going to work.

"Thus the evidence relevant and material to the employment relationship issue is conflicting—specifically, regarding whether claimant satisfied the employer's requirements and conditions for employment. We cannot say that one [party's] version of the events on June 11, 1999 is more persuasive or compelling than the other. Consequently, we find the evidence to be in equipoise. Under these circumstances we are unable to find that claimant has carried her burden of proving that she engaged to furnish services for the employer[.]" (Citations omitted.)

The Board did not explicitly address claimant's argument based on implied contract.

On judicial review, claimant argues that the Board erred in relying exclusively on the circumstances surrounding the hiring process on June 11, 1999, to determine whether the parties entered into a contractual employment relationship. Claimant argues that such a contract may be either express or implied and points to testimony regarding

the parties' subsequent course of conduct that supports a finding of an implied contract. In this respect, claimant refers to uncontradicted testimony that claimant picked employer's cherries for six to seven days with the full knowledge of employer's foreman and other supervisory employees.

■■ Claimant's argument is well taken. A contract for hire that satisfies the "engagement" requirement of ORS 656.005(30) may be based on either an express or implied contract. *Oremus,* 11 Or App at 446. In *Staley v. Taylor,* we explained the various permutations of the term "implied contract":

> "The term 'implied contract' can refer either to a contract implied-in-fact or to one implied-in-law. The two concepts differ substantially, and the failure to distinguish them has sometimes led to confusion. An implied-in-fact contract is no different in legal effect from an express contract. *The only difference between them is the means by which the parties manifest their agreement.* In an express contract, the parties manifest their agreement by their words, whether written or spoken. *In an implied-in-fact contract, the parties' agreement is inferred, in whole or in part, from their conduct.* Other than questions of proof, the two types of contracts have the same legal effect. In both an express contract and an implied-in-fact contract, the plaintiff is ordinarily entitled to recover benefit of the bargain damages.

> "The term implied contract has also been used to refer to contracts that are implied-in-law or quasi-contracts. 'A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent * * *.' 1 *Corbin on Contracts* § 19 at 46. The category includes a variety of types of contractual obligations that are implied to prevent injustice, and the remedy for an implied-in-law contract may be less than the benefit of the bargain damages ordinarily available for breach of an express or implied-in-fact contract." 165 Or App 256, 262, 994 P2d 1220 (2000) (emphasis added; internal citations omitted).

It is apparent from her arguments to the Board and on review that claimant asserted the existence of an implied-in-fact contract based on the parties' course of conduct. The conduct that is relevant to the inference of assent is not limited

to the parties' actions at the commencement of the alleged relationship; such a limitation would belie the very nature of the implied-in-fact doctrine as recognizing that parties may manifest their assent to an agreement through their actions over an extended period of time. *See Hix v. SAIF*, 34 Or App 819, 579 P2d 896 (1978) (examining the parties' conduct over the course of an entire summer to determine whether there was sufficient evidence of either an express or implied contract).

In light of claimant's arguments to the ALJ and the Board, the Board's general conclusion that claimant was not a covered worker must encompass two particular conclusions: first, that claimant did not successfully complete the hiring process on June 11, 1999; and second, that claimant did not become a worker by virtue of an implied contract based on the parties' course of conduct after June 11. The "findings of fact" contain findings that support the implied contract theory, but they do not address the crucial fact on which the existence or nonexistence of an implied contract would depend: whether employer's supervisory employees, whose knowledge may be imputed to employer, *Tri-Met, Inc. v. Odighizuwa*, 112 Or App 159, 164, 828 P2d 468 (1992), knew that claimant was working for, being directed by, and receiving compensation from employer. The Board's only reference to employer's actual or constructive knowledge on that issue appears in the Board's "conclusions of law" where it briefly repeats the conclusion of the ALJ that "the employer was not even aware that claimant and her son were picking cherries." Even if we were to construe that reference as an adoption of the ALJ's finding, that statement either refers to Mr. Roloff himself, in which case it is irrelevant if his supervisory employees were "aware," or, if it refers to the supervisory employees, lacks not only substantial evidence in the record but any evidence whatsoever. Further, the Board's "Conclusions of Law and Opinion" is silent as to the implied contract theory.

In fact, despite this single sentence regarding employer's awareness, the Board focused exclusively on the interactions between claimant and employer on June 11, as the following excerpt from the conclusions of law makes clear:

"Thus, the evidence relevant and material to the employment relationship issue is conflicting—specifically, regarding whether claimant satisfied the employer's requirements and conditions for employment. *We cannot say that one [party's] version of the events on June 11, 1999 is more persuasive or compelling than the other. Consequently, we find the evidence to be in equipoise.*" (Emphasis added.)

The evidence that is "in equipoise" is, "specifically," the evidence dealing with whether or not employer asked claimant to watch the video as a condition of employment and other "events on June 11, 1999." There is no discussion of whether claimant and employer established an implied contract by virtue of employer's imputed knowledge of her work and remuneration.

■ Our standard of review precludes us from re-evaluating the evidence before the Board and drawing our own factual findings from that evidence. Under ORS 656.298(7), we review orders of the Board for errors of law, ORS 183.482(7), and for substantial evidence, ORS 183.482(8). *Garcia v. Boise Cascade Corp.*, 309 Or 292, 296, 787 P2d 884 (1990); *see also OR-OSHA v. Jeld-Wen, Inc.*, 163 Or App 418, 424, 988 P2d 418 (1999) ("Clearly, there is evidence in the record that is contrary to the Board's findings. Nonetheless, the question on review is not whether substantial evidence supports petitioner's version of the facts but whether, after considering the whole record, substantial evidence supports the Board's findings.").

■ However, that standard does not require us to disregard the fact that the Board did not make the findings necessary to support its legal conclusions or did not adequately explain the factual and analytic basis for them. Rather, we require a Board's order to be a "reasoned opinion based on explicit findings of fact" and to contain an "explanation of why facts supported by evidence lead to its conclusion." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 205, 207, 752 P2d 312 (1988). *See, e.g., Cameron Logging v. Jones*, 109 Or App 391, 393, 820 P2d 8 (1991). Moreover, if it is apparent that the Board failed to consider evidence relevant to the issues before it, remand is appropriate to allow the Board to

reconsider claimant's claim "in light of the entire * * * record." *Franke v. Lamb-Weston, Inc.*, 165 Or App 517, 525, 997 P2d 876 (2000). That is what happened here. The Board did not consider claimant's implied contract theory, particularly whether employer had imputed knowledge that claimant worked for, was directed by, and received compensation from employer. It should have.

Reversed and remanded.[1]

---

[1] The Board's order affirmed both SAIF's denial of the claim against Roloff Farms, Inc., as well as a separate denial by PAULA Insurance of a claim against Roloff Bros., Inc. Claimant has not challenged PAULA's denial. On remand, the Board should limit the scope of its order to reconsideration of the claim against Roloff Farms, Inc.