206                 September 4, 2025                 No. 790

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of Jared R. Zeigler, DCD,
Claimant.

EMPLOYER SOLUTIONS STAFFING GROUP, LLC,
*Petitioner,*

*v.*

SAIF CORPORATION;
Atlas Leasing; Billeter Roads & Forestry;
and Jared R. Zeigler, Deceased,
*Respondents.*

Workers' Compensation Board
2004805, 1800953, 1705056, 1704676;
A181542

Argued and submitted October 10, 2024.

Daniel J. Sato argued the cause and filed the brief for petitioner.

Andrew W. Newsom argued the cause and filed the brief for respondent Jared R. Zeigler.

Michelle L. Shaffer argued the cause and filed the brief for respondents State Accident Insurance Fund Corporation and Billeter Roads & Forestry.

Rebecca A. Watkins argued the cause and filed the brief for respondents Atlas Leasing/State Accident Insurance Fund Corporation.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

This workers' compensation case involves a dispute between three entities over responsibility for a fatal injury that the decedent—claimant's spouse—suffered while he was working at Billeter Roads and Forestry, LLC's (BRF's) Sixes River project on August 22, 2017. The three entities at issue are Atlas Leasing (Atlas), Employer Solutions Staffing Group, LLC (ESSG) and its claim processor Gallagher Bassett, and BRF. Atlas, a staffing recruiting agent, recruited the decedent on behalf of Employer Solutions Staffing Group, LLC (ESSG), a national staffing agency, and placed him with worksite client Billeter Marine, LLC (BM). However, the decedent also worked at several worksites of BRF, a distinct entity—which was owned by the same person, Peter Billeter, and operated out of the same office—with separate payroll, taxes, and banking. On judicial review of an order of the Workers' Compensation Board, ESSG and its claims processor Gallagher Bassett contend that the board erred in (1) declining to apply judicial estoppel to conclude that BRF was the responsible employer; (2) designating ESSG as the responsible employer; and (3) awarding attorney fees to claimant's attorney. We reject all three of ESSG's assignments of error. Accordingly, we affirm.

## I.   STANDARD OF REVIEW

We review the board's interpretation of law for legal error and findings of fact for substantial evidence. ORS 183.482(8)(a), (c). "If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action," the court shall "[s]et aside or modify the order; or [r]emand the case to the agency for further action under a correct interpretation of the provision of law." ORS 183.482(8)(a). If the court finds that the order is not supported by substantial evidence in the record, the court shall set aside or remand the order. ORS 183.482(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* Review of substantial evidence necessitates a review of the application of law to the facts for substantial reason to determine whether the board logically drew legal conclusions from the factual

findings. *SAIF v. Harrison*, 299 Or App 104, 105, 448 P3d 662 (2019).

## II.   FACTUAL BACKGROUND

We provide an overview of the facts necessary to understand the issues before us, which we later supplement with additional facts in our discussion of each legal issue. ESSG contracted with Atlas to recruit and place employees with third parties. The agreement required ESSG to furnish and keep in full force and effect at all times during the term of agreement workers' compensation insurance covering all recruited employees.

In 2017, Carol Jackson, the office manager for both BM and BRF, contacted Atlas to discuss the need for excavator work on forest land at Goat Rock quarry and at an ongoing road project at Sixes River. BM's work included marine services, pile driving, excavation support, and site work constructing on the coast. BRF's work included reconstruction and construction on forest land. Atlas and Jackson were familiar with Goat Rock quarry and knew that it was located on forest land. Atlas also knew that Jackson worked for BRF, and Atlas had placed workers at BRF's job sites previously. Both the Sixes River Road project and the Goat Rock quarry project were BRF projects, but the resulting staffing agreement was between Atlas and BM; that is, BM, not BRF, was identified as the worksite client.

The decedent became an employee of ESSG and was placed at BRF's Sixes River project to work as an excavator. He turned in weekly timecards to Atlas, which processed the timecards and sent them to ESSG. ESSG paid the decedent's wages based on his reported hours and invoiced Atlas with the appropriate markup; Atlas then invoiced BM, its worksite client. ESSG provided Atlas with information on BM and BRF, including the nature and location of the work assigned to the decedent. The fact that the decedent was working at the Sixes River project was reflected on his timecards. Several of his timecards identified the jobsite employer as BM, but the individual time entries indicated "sixes river" and "goat rock pit" in parentheses next to the date and times logged.

While the decedent was working at the Sixes River project, several issues arose. First, there was a delay in paying the decedent because his timecards identified the jobsite employer as BM, and ESSG was missing information on BM. To address the issue, Jackson provided ESSG with the necessary information but still neglected to change the client's name from BM to BRF. The decedent also requested a job change when he was unhappy with his job conditions at BM, which Jackson resolved and advised Atlas that changes were made. After that, the decedent continued to work at the Sixes River project, when Jackson realized that BM was incorrectly being billed for decedent's work for BRF, and thus she began paying Atlas's invoices from BRF's accounts. However, at no point did Atlas or Jackson communicate to ESSG about the discrepancy between decedent's worksite client placement and the actual client or any changes that were made.

Following the decedent's fatal accident at the Sixes River Project on August 22, 2017, claimant filed a workers' compensation claim with ESSG's claims administrator, GB. ESSG, BRF, and Atlas each issued separate denials of the worker's compensation claim and responsibility, each of which claimant appealed. In December 2017, the Workers' Compensation Division issued an order under ORS 656.307 designating ESSG as the paying agent while an ALJ determined the responsible paying party. Both Atlas and ESSG moved to dismiss themselves from the responsibility hearing, and claimant objected to those motions. The ALJ denied both motions.

Meanwhile, in 2019, claimant filed an Employment Liability Law (ELL) action in circuit court under ORS 654.305 to 654.335, naming ESSG, BRF, and Atlas as defendants. BRF filed a motion for summary judgment citing the exclusive remedy provision of ORS 656.018 and claimed it was the decedent's sole employer. Before any of the other defendants could respond to BRF's summary judgment motion, all the parties participated in private mediation during which they reached a global settlement of the ELL action. The civil action was dismissed on October 1, 2020.

Back in the workers' compensation proceeding, a three-day responsibility hearing on the workers'

compensation claim took place in January 2021, before an ALJ. The ALJ determined that ESSG was the responsible employer. On review, the board adopted the ALJ's amended order on the issue of responsibility and awarded attorney fees under ORS 656.307(5).

Petitioner ESSG and its claims administrator now seek judicial review of the board's order, raising three assignments of error, which we address in turn.

## III.  ANALYSIS

### A.  *Judicial Estoppel*

We begin with ESSG's first assignment, in which ESSG contends that, because BRF asserted in the ELL action that it was the decedent's sole employer, it should be judicially estopped from denying responsibility in this case and that the board erred in declining to apply judicial estoppel. The board found that the record did not establish that a final determination on whether BRF was the responsible employer was made by a judicial tribunal in the prior ELL action and adopted the ALJ's conclusion that, "to the extent one may interpret those statements as contrary to the position of [BM and BRF] in this proceeding, I find no harm to the judicial system has taken place." The board based that determination on the fact that, before any of the other defendants could respond to BRF's summary judgment motion, all the parties participated in private mediation during which they reached a global settlement of the ELL action, which was then dismissed.

We review whether the elements of judicial estoppel have been established for legal error. *Wells Fargo Bank, NA v. Haas*, 279 Or App 393, 400, 379 P3d 693 (2016); ORS 183.482(a). Judicial estoppel is an equitable principle primarily concerned with the integrity of the judicial process. *Day v. Advanced M & D Sales, Inc.*, 336 Or 511, 524-25, 86 P3d 678 (2004). To our knowledge, no existing Oregon case law holds that judicial estoppel applies in an administrative proceeding following a judicial decision, and we need not decide that issue here, because, in any event, it does not apply on these facts.

To determine whether a party may assert the affirmative defense of judicial estoppel, we consider three issues: (1) a benefit in the earlier proceeding, (2) different judicial proceedings, and (3) inconsistent positions. *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 611, 892 P2d 683 (1995), *appeal after remand*, 158 Or App 376 (1999), *rev den*, 329 Or 61 (1999). Judicial estoppel cannot be applied in a subsequent proceeding unless a party has successfully asserted an inconsistent position in a prior proceeding. *Id.* at 610. Further, absence of a record regarding the prior proceeding can be fatal to a party asserting judicial estoppel because the court cannot tell what position the estopped party took in the prior proceeding. *Day*, 336 Or at 524-25 (concluding the defendant could not invoke judicial estoppel where the "record [was] devoid of any indication that an administrative or judicial tribunal made a final determination regarding plaintiff's status as a subject worker at the time of his injury").

ESSG argues that BRF has taken inconsistent positions by claiming that they were the responsible employer in the prior ELL action and then claiming not to be the responsible employer in this workers' compensation proceeding. BRF argues that it did not successfully assert that it was the responsible employer in the ELL action because that action ended in settlement. Because there is no evidence in the record that a judicial tribunal made a final determination regarding the identity of the decedent's employer, we agree with the board that BRF was not judicially estopped from asserting the position that it did in the workers' compensation proceeding. To the extent that ESSG contends that a settlement necessarily constitutes a final determination because it is a benefit obtained through assertion of BRF's position, ESSG did not make that argument before the board, and, accordingly, we will not address it. The board did not err in declining to apply the doctrine of judicial estoppel to this case because of the settlement of the ELL claim.

B.   *Employer Responsibility*

Next, we address ESSG's second assignment and whether the board appropriately designated ESSG as the responsible employer. The board found that ESSG had a constructive contractual relationship with BRF based on its

acceptance of service fees and payment of decedent's wages with knowledge that the decedent was working on a project of BRF, not BM. By "constructive contractual relationship," we understand the board to have referred to an implied-in-fact contract. The board based its determination on findings of fact that ESSG challenges. As explained below, we conclude that the board's findings are supported by substantial evidence in the record. *See* ORS 183.482(8)(c) (describing standard). The legal question is whether those facts were sufficient to give rise to an implied-in-fact contract, as the board concluded that they were—something that ESSG also challenges. As explained below, we agree with the board as to that issue.

ORS 656.017(1) requires employers that are subject to ORS chapter 656 to provide workers' compensation coverage for subject workers. However, an exception exists for temporary service providers and "client[s] to whom workers are provided when the temporary service provider complies with ORS 656.017." ORS 656.018(5)(a) (2023), *amended by* House Bill (HB) 2800 § 5 (2025).[1] A "temporary service provider" is a person who provides workers, by contract and for a fee, to a client on a temporary basis. ORS 656.850(1)(c) (2023), *amended by* HB 2800, § 3 (2025). "[T]he client of a temporary service provider is not the employer of temporary workers provided by the temporary service provider." ORS 656.005(13)(b) (2023), *amended by* HB 2800 § 24 (2025). ESSG contends that, because it did not have a written contract with BRF, BRF was not its client and, consequently, BRF, not ESSG, was the decedent's employer. As noted above, the board determined that ESSG had an implied-in-fact contract with BRF and, accordingly, was BRF's client and the decedent's employer.

"To form a contract, there must be a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement." *Bates v. Andaluz Waterbirth Center*, 298 Or App 733, 738, 447 P3d 510 (2019) (internal quotation marks omitted), *rev den*, 366 Or 292 (2020). A contract must be based on the parties' communications and

---

[1] ORS 656.018, ORS 656.850, and ORS 656.005 were all amended by HB 2800 (2025). The 2023 versions of those statutes apply in this case, and so our citations are to the pre-amendment versions.

overt acts that are relevant in determining the terms and obligations of the contract. *Ken Hood Construction v. Pacific Coast Construction*, 201 Or App 568, 578, 120 P3d 6 (2005), *adh'd to as modified on recons*, 203 Or App 768, 126 P3d 1254 (2006).

An implied-in-fact contract is no different from an express contract except in the means by which the parties manifest their agreement. *Mindful Insights v. VerifyValid*, 301 Or App 256, 266, 454 P3d 787 (2019), *adh'd to on recons*, 302 Or App 528, 461 P3d 1034 (2020), *rev allowed*, 367 Or 257, 475 P3d 880 (2020). In an implied-in-fact contract, the parties' agreement is "inferred, in whole or in part, from the parties' conduct," whereas, in an express contract the parties manifest their agreement by words, either written or spoken. *Kizer Excavating v. Stout Building Contractors*, 324 Or App 211, 217, 525 P3d 883, *adh'd to as modified on recons*, 325 Or App 642, 529 P3d 1024 (2023). Conduct from which an implied-in-fact contract may be inferred is not limited to conduct by the parties at the outset of the relationship, since "such a limitation would belie the very nature of the implied-in-fact doctrine as recognizing that parties may manifest their assent to an agreement through their actions over an extended period of time." *Montez v. Roloff Farms, Inc.*, 175 Or App 532, 536-37, 28 P3d 1255 (2001) (holding that when an employer knows that a worker began performing job tasks prior to formal hiring, the board and the court may infer an employment relationship under ORS 656.005(30) as an implied-in-fact contract based on the parties' conduct).

Under the "Employment Recruiting and Placement Outsource Agreement" between ESSG and Atlas, those parties agreed that "ESSG and ESSG's workers' compensation carrier shall have the right to inspect the premises of third parties * * * and to make recommendations pertaining to job safety." Also "ESSG shall have the right to cease providing recruited employees to a third party if, in the opinion of ESSG, after consultation with [Atlas], ESSG believes that the third party's worksite or any portion thereof or any practice or equipment of the third party represents an undue risk of injury or death to recruited employees." According

to the new customer information sheet, which Atlas fills out with the worksite client as part of ESSG's employment application, Atlas also had the responsibility to perform weekly job site inspections to ensure its temporary employees were working at the correct placement, familiarize itself with the job site, and vouch for the safety of the job sites.

The board found that Atlas served as ESSG's "eyes and ears for job site safety, [job site location], and communication with clients and employees," and ESSG does not dispute that finding. The board found that, through Atlas, ESSG had a relationship with BRF and was aware of decedent's placement at the Sixes River project and Goat Rock quarry. The record shows that Atlas knew that BRF's projects included work at Goat Rock quarry and Sixes River on forest land and that decedent was working as an excavator at the quarry on forest land. Atlas received several time-cards that tracked decedent's job site changes, which identified "sixes river" and "goat rock pit" in parentheses next to the date and time entries and took no action to investigate further about where the decedent was working. Those timecards were ultimately sent to ESSG so that ESSG could pay decedent, which it did. Atlas also received several payments from BRF in response to their invoices and accepted payment without inquiry, while ESSG continued to collect fees and income from Atlas. Finally, "Atlas declined to make any safetyinspections throughout the decedent's tenure as an employee" and, had Atlas fulfilled any of its obligations under the contract to do so, "ESSG could have ceased the employment relationship immediately if it chose to do so."[2]

In our view, the record supports the board's finding that ESSG was aware of and manifested its agreement to decedent working for BRF at the Sixes River project. ESSG contends that it entered into a staffing agreement with BM and was therefore not aware that decedent was working for BRF. We have explained that "parties may manifest their assent to an [implied-in-fact contract] through their

---

[2] Atlas did not perform the weekly job site inspections for Goat Rock quarry. On several occasions, the decedent complained of working conditions at Goat Rock quarry to Atlas. As a result, Jackson moved decedent to other job sites, including the Sixes River project. Those job-site changes were reflected in his timecards.

actions over time." *Montez*, 175 Or App at 537 (noting that the existence of an implied contract depended on "whether [the] employer's supervisory employees, whose knowledge may be imputed to [the] employer, knew that [the] claimant was working for, being directed by, and receiving compensation from [the] employer"). Although ESSG did enter into an agreement with BM, Atlas was aware that decedent was working as an excavator on forest land, that BRF's projects included such work on forest land, and that BM's projects did not include such work. Further, Atlas knew of decedent's jobsite changes as indicated on his timecards, and ESSG continued to collect fees and income from the relationship. As the board stated, "If ESSG intends to rely on Atlas as the eyes and ears for job site safety and communication with its clients and employees, then the information provided to Atlas by those clients and employees should be communicated by Atlas to ESSG." As a result, "substantial justice would not be served if ESSG could relieve itself from liability by claiming ignorance as to the location and job duties of their employees when their 'eyes and ears,' i.e. Atlas, failed to provide complete information and perform regular inspections and follow-up per their contractual obligation." We agree with the board that Atlas's knowledge that the decedent was working at the Sixes River project, which was imputed to ESSG, and conduct—failure to inspect, continued payment of the decedent's wages, and acceptance of payment from BRF—during the course of the decedent's employment amounted to ESSG manifesting assent to an implied-in-fact contract with BRF.

Alternatively, ESSG argues that the contract between ESSG and BRF resulted from material misrepresentation and that the board should have recognized that the contract should be rescinded because ESSG entered into an agreement with BM and was not aware that decedent was working for BRF. Insofar as ESSG contends that, as a matter of the common law of contracts, it should be excused from the implied-in-fact contract because it was the result of misrepresentation, that conclusion is incompatible with the fact that, through Atlas, ESSG was aware that the decedent was working for BRF.

The conclusion that BRF was a client of ESSG through an implied-in-fact contract also leads us to reject the remainder of ESSG's arguments. There was no employer-employee relationship between decedent and BRF for several reasons. First, BRF did not pay wages to decedent, rather, ESSG paid his wages. Second, decedent submitted his IRS W-4 form to ESSG. Given that decedent was not an employee of BRF, the "right to control" and "nature of work" tests, which determine whether an individual is a "worker," are inapplicable here. *SAIF v. DCBS*, 250 Or App 360, 364, 284 P3d 487 (2012) (explaining that the "right to control" and "nature of the work" tests are used to determine whether an individual is a worker). Finally, the borrowed-servant doctrine does not apply because the fact that ESSG provided decedent to client BRF through an implied-in-fact contract means that BM could not have loaned decedent to BRF. As such, we conclude that the board's order finding that ESSG was the responsible employer is supported by substantial evidence and reason.

C.  *Attorney's Fees*

Finally, we address whether claimant's attorney "actively and meaningfully" participated in the responsibility litigation and is thus entitled to attorney fees under ORS 656.307(5). The board found that the director of the Department of Consumer and Business Services issued an order pursuant to ORS 656.307 designating ESSG as the paying agent and therefore attorney fees were available under ORS 656.307(5), which provides for an award of fees when "claimant appears at [a responsibility] proceeding and actively and meaningfully participates through an attorney." The board concluded that claimant's counsel was entitled to $32,000 in attorney fees, based on the following facts: Claimant's attorney meaningfully participated by taking a clear position that ESSG or Atlas should be held responsible. Further, claimant's attorney actively participated in "marshalling the case to hearing, responding to procedural matters, addressing motions, and participating in the three-day hearing."

We review the board's interpretation of law for legal error and findings of fact for substantial evidence. ORS

183.482(8)(a), (c). "An award of attorney fees in a workers' compensation case is proper only when expressly authorized by statute." *Petshow v. Farm Bureau Insurance*, 76 Or App 563, 568, 710 P2d 781 (1985), *rev den*, 300 Or 722 (1986). ORS 656.307(5) authorizes attorney fees for legal services before an ALJ where only responsibility is disputed. *See Dean Warren Plumbing v. Brenner*, 150 Or App 422, 427, 946 P2d 356 (1997), *rev dismissed as improvidently allowed*, 327 Or 174 (1998).

An attorney "actively and meaningfully participates" for the purpose of ORS 656.307(5) when the claimant has a material, substantial interest in deciding who is the responsible party and advocates that a particular employer is the responsible party. *Keenon v. Employers Overload*, 114 Or App 344, 347, 835 P2d 155 (1992); *see also Petshow*, 76 Or App at 569 ("Unless the claimant takes a position concerning which of the insurers is responsible and actively litigates that point, his role in the hearing is merely that of a witness."). "The legislature intended ORS 656.307(5) to be applied restrictively to allow attorney fees only when a claimant has a material, substantial interest in deciding who is the responsible insurer or employer, that is, if the claimant's benefits can be affected by the outcome of the responsibility hearing." *Keenon*, 114 Or at 347.

ESSG argues that claimant's counsel did not actively and meaningfully participate in the litigation and did not firmly take a position on which insurer should be held responsible. We disagree. After the initial order under ORS 656.307 was issued, claimant's attorney challenged all three of respondents' motions to dismiss, in which each entity denied responsibility. If ESSG's motion had been granted, claimant would likely have been left without worker's compensation benefits because neither Atlas nor BRF would have qualified as decedent's employer. Further, in light of testimony about the decedent's interactions with Billeter in working toward a change of job, by the time of the responsibility hearing, there was still some potential for "an attempt to revoke acceptance and deny compensability based on a finding of non-subjectivity or enter a denial of compensability based on fraud, misrepresentation or other illegal activity by the worker" under ORS 656.262(6)(a).

As such, claimant had a material, substantial interest in determining that ESSG was the responsible party and evidence in the record supports that claimant litigated that issue. Therefore, claimant's counsel's efforts were "active and meaningful" in accordance with ORS 656.307(5).

### III.   CONCLUSION

In sum, the board did not err in declining to apply judicial estoppel against BRF because a judicial tribunal did not make a final decision on whether BRF was decedent's employer. We also disagree with petitioner that ESSG was not the responsible employer, because ESSG had an implied-in-fact contract with BRF. Finally, the board did not err in imposing attorney's fees because claimant had a material, substantial interest in determining that ESSG was the responsible party and claimant's counsel's efforts were "active and meaningful" in accordance with ORS 656.307(5).

Affirmed.